57 So.2d 405

McEACHERN v. PLAUCHE LUMBER & CONSTRUCTION CO., Inc., et al.

No. 40126.

Jan. 14, 1952.

Rehearing Denied Feb. 18, 1952.

Ashton L. Stewart, Baton Rouge, for Connie B. McEachern, plaintiff-appellant.

De Blieux & Hinton, Baton Rouge, for Plauche Lumber & Construction Co., Inc., defendant-appellant.

Brumfield, Hebert & Rush, Baton Rouge, for defendant and plaintiff in call in warranty and appellee L. C. Harrell.

FOURNET, Chief Justice.

The plaintiff, Connie B. McEachern, having discovered that the house purchased from the defendant L. C. Harrell only five months before, and built within the year, was defective in its construction whereas it had been allegedly represented as meeting F.H.A. minimum construction requirements, and claiming the benefit of a warranty of F.H.A. approval given to his author in title, sued his vendor (Harrell) and (under substitution and subrogation of his vendor's rights and actions of warranty against preceding owners) joined the Plauche Lumber and Construction Company, Inc., from whom Harrell bought, for judgment in solido in amount of $4,737.80, the alleged cost to repair his residence and remedy the structural deficiencies.

Harrell answered, calling in warranty the Construction Company and, affirmatively alleging numerous structural defects and vices of which he denied previous knowledge, averred that the deviations from F.H.A. requirements are latent defects in the construction of the building and violations of the Company's warranty to him for which he was entitled to judgment against the Company in any amount rendered in favor of the plaintiff against him. To this call in warranty as well as to the plaintiff's petition the Construction Company filed exceptions of no cause or right of action and, reserving its rights, answered, generally denying liability.

Following trial on the merits the district judge found that there had been no express warranty by the Construction Company that the house would be built in accordance with the minute F.H.A. construction requirements, but held that the defendants should nevertheless be required to furnish the plaintiff a house properly and soundly constructed. A close inspection of the building convinced him that it was not soundly constructed, and had vices and defects which were not apparent on usual inspection—among these being that (1) there were no footings under the piers, (2) the sills were inadequate, (3) there was no storm sheeting between the brick veneer walls and the wall studs, (4) there was no bridging of the floor joists, and (5) the rafters supporting the roof were improper-

ly spaced and were unbraced, with the result that the house had settled, the floors were uneven, the roof had begun to sag, and wind blew in between the brick veneer wall and the sheet rock nailed to the wall studs. Being of the opinion that although the plaintiff was subrogated to Harrell's right to an action in warranty against the Construction Company, he was not for that reason given a solidary action against both, the court rendered judgment in favor of plaintiff and against Harrell in the sum of $1,175, and in favor of Harrell on his call in warranty against the Construction Company in the same amount.

From this judgment the plaintiff and the Construction Company both prosecuted appeals, and Harrell answered the appeal, urging the correctness of the judgment insofar as the Construction Company is held to liability in the same amount as that for which judgment is rendered against him.

It appears that in the latter part of 1948 the Plauche Lumber and Construction Company (in the business of building homes for sale upon completion) was finishing the house now owned by plaintiff when Harrell became interested in purchasing the property and consulted the National Home Mortgage Company about a loan; the manager agreed to assist in procuring an insured F.H.A. mortgage, and as a result of his efforts the Construction Company addressed a letter to Harrell which stated, in part, that "The house is to be completed in such manner that it will be approved by F.H.A." The sale was subsequently consummated (January, 1949) and an F.H.A. insured mortgage was executed by Harrell for $7,000. Some five months later Harrell sold to the plaintiff, having occupied the house only a few weeks and moved because of distance from the city's facilities. Before the sale, the plaintiff was given the letter from the Construction Company to Harrell, referred to above.

From the record it further appears that a parish permit to build the house was issued to the Construction Company without submission and approval of any plans and specifications, no minimum building requirements being in force at that time with respect to property outside of the city limits of Baton Rouge—the location of the property under consideration.

The defendant Company is reurging here its exceptions filed to Harrell's call in warranty. It is its contention that under the express provisions of the Code of Practice, there must be a contract to defend in order that there may be a call in warranty, Art. 378, and in real or hypothecary actions, such procedure only lies in cases of eviction. Art. 379.

The plaintiff on the other hand, urging the correctness of the trial judge's ruling that "the example given in the article of the Code of Practice [Art. 379] is not exclusive and that purchasers may call in warranty their vendors for other causes than eviction," argues further that if it be

found that there must be a specific contract to defend under the definition of warranty found in Article 378, Code of Practice, before the obligation to do so arises, then the Construction Company gave that specific warranty in its deed to Harrell by stipulating that "* * * vendor * * * does by these presents * * * sell * * under all lawful warranties * * *"—one of the warranties specifically provided in the Civil Code, Article 2476, being that against hidden defects.

Warranty, defined in the Code of Practice to be "The obligation which one contracts to defend another in some action which may be instituted against him", Art. 378, may be of two kinds, real or personal. The former is declared to be "that which arises in real or hypothecary actions; as when a purchaser is sued in eviction of an immovable property which has been sold to him." Art. 379.

▇▇▇ The trial judge properly overruled the exceptions of the defendant Construction Company as to Harrell's call in warranty. The obligation of the warrantor to defend an action involving hidden defects, as well as his obligation to defend against eviction, are obligations imposed on the seller by law through the clear provisions of the Revised Civil Code—Article 2475 providing that "The seller is bound to two principal obligations, that of delivering and *that of warranting the thing which he sells*", and Article 2476 providing "The warranty * * * has two objects; the

first is the buyer's peaceable possession of the thing sold, and *the second is the hidden defects of the thing sold or its redhibitory vices*", to be found under the heading "General Provisions" in (Book III, Title VII) Chapter 6, "Of the Obligations of the Seller." (Emphasis ours.) The stipulation in the deed that the sale was made "under all lawful warranties" was simply a recognition of these legal obligations imposed on the seller by our law—as distinguished from limitations of warranty, authorized by the same Code. For example, parties may by particular agreement dispense with any warranty, add to the obligation thereof, or diminish its effect, Art. 2503; and the law relieves the seller of the redhibitory action when the latent defects have been declared by the vendor to the vendee before or at time of the sale. Art. 2522.

▇▇▇ On passing to the merits, we cannot agree with the plaintiff's contention that the stipulation in the letter addressed to Harrell by the Construction Company that "The house is to be constructed in such manner that it will be approved by F.H. A." was intended to mean that the house was constructed in accordance with F.H. A.'s "Minimum Property Requirements for Properties of One or Two Living Units Located in the State of Louisiana"—even though Harrell apparently understood that F.H.A. approval meant that the house had been inspected by F.H.A. during its construction, and the plaintiff (a carpenter by

trade, who had recently worked on a house built in accordance with F.H.A. construction and inspection requirements) upon purchasing from Harrell was under the same impression. We are nevertheless convinced, as was the trial judge, that the plaintiff and his immediate vendor believed, as they had a right to, that each was purchasing a house that had been properly and soundly constructed. From our appreciation of the evidence we also agree with the Judge's conclusion that the house was not soundly constructed, that it has vices and defects of such a nature as would not have been discovered by the buyer upon simple inspection, Article 2521, Civil Code, and that the plaintiff is therefore entitled to a diminution of the price, Articles 2541 and 2542, Civil Code, the criterion thereof being the amount necessary to convert the unsound structure into a sound one. Bozeman v. McDonald, La.App., 40 So.2d 517, cert. denied; Morehouse Ice Co. v. Tooke & Reynolds, La.App., 154 So. 402.

■ However, we cannot agree with the conclusion of the trial judge that "in view of the price which the plaintiff paid for the property" he should not be allowed to recover for other hidden defects found by the court to exist, "such as laying the subflooring perpendicular instead of at a forty-five degree angle, and such' as putting the wall studs and ceiling rafters on centers too far apart, and improperly stripping the ceiling joists," on the theory that "they do not materially affect the appearance and will not cause any additional damage to the house." The evidence, we think, affirmatively shows that these defects should be remedied to render the house a sound structure.

■ The learned trial judge, in fixing the award at $1,175 for repairing the defects for which he allowed recovery, "decided to accept the estimate of Mr. Couvillion" (the contractor who testified for the defendant Construction Company) without assigning any particular reason therefor, merely observing "even though [the Court] believes his estimate of the cost of removing the sheet rock and placing felt and storm sheeting the wall studs conservative." From our appreciation of the evidence we think that the plaintiff has established his claim by the preponderance of evidence required by law. He offered the testimony of Mr. C. A. Brock, a carpenter by trade and now in the contracting business, who testified as to the vices of construction forming the basis of this suit (which correspond to the findings of the trial judge, including the five defects listed in paragraph 3 of this opinion for which recovery was allowed); and after a thorough examination of the building and its foundations on two different occasions, gave careful estimates of the cost to repair, based on the size of the structure, the price of each separate item of material, the time required and labor costs, on the basis

of which he submitted a written bid to put the house in sound condition for $4,737.80.

This testimony is in no wise discredited. The testimony given by Mr. Couvillion is based on vague estimates after a casual inspection of the property made the day before. He failed to inspect the footing and piers beneath the house, did not know the number of piers presently supporting the structure nor whether additional piers would be necessary, never measured the house, did not know the number of rooms nor their dimensions, and his testimony is replete with such expressions as "I can give you a guess," "Something like that," "I don't know what it would cost," "I didn't count," "It is usually done," "I have not gone that far into it"—furthermore, he does not offer to undertake the work at his figures.

We concur in the ruling of the trial judge that although the buyer is subrogated to the seller's right to action in warranty against all others, Article 2503, Civil Code, he is not given a solidary action against all previous vendors; and therefore the plaintiff, having chosen to sue his vendor, has no right to an action in solido against the Construction Company.

For the reasons assigned, the judgment of the lower court is amended and the amount of the award in favor of plaintiff, Connie B. McEachern, and against defendant, L. C. Harrell, is increased from Eleven Hundred Seventy-five and No/100 ($1,175.00) Dollars to the full sum of Four

Thousand Seven Hundred Thirty-seven and 80/100 ($4,737.80) Dollars; and the amount of the award in favor of the defendant, L. C. Harrell, and against warrantor, Plauche Lumber and Construction Company, Inc., is increased to the same amount (that is, from Eleven Hundred Seventy-five and No/100 ($1,175.00) Dollars to Four Thousand Seven Hundred Thirty-seven and 80/100 ($4,737.80) Dollars); and, as thus amended, the judgment is affirmed.