309 So.2d 343 (1975)
Godfrey PELTIER
v.
SEABIRD INDUSTRIES, INC. and Insurance Company of North America.
Nos. 55856, 55859.
Supreme Court of Louisiana.
March 7, 1975.
Writ denied. On the basis of the assignment of error, the result is correct.
BARHAM, J., concurs and assigns reasons.

No. 55859.
In re: Godfrey Peltier applying for certiorari, or writ of review, to the Court of Appeal, Third Circuit, Parish of Iberia. 304 So.2d 695.
Writ denied. On the basis of the assignment of errors, the result is correct. See our denial of writ in # 55,856 on the docket of this Court.
BARHAM, J., concurs and assigns reasons.
TATE, J., concurs. Since the redhibitory defect existed at the time the product left the manufacturer, the manufacturer is primarily liable. Since in the companion proceedings the manufacturer is held liable, and since the plaintiff only alternatively desires the seller to be held, the denial of this writ does practical justice; even though the seller and the manufacturer are solidarily liable, as between them the manufacturer is primarily liable for a defect of manufacture.

Nos. 55856, 55859.
BARHAM, Justice, Concurring in Writ Denial in both 55856 and 55859:
Under the limited assignment of errors, and perhaps because of the posture of the case before us, the real errors in the judgment below are not submitted to us for review. I am of the opinion that neither the trial court nor the court of appeal should have sustained an exception of no cause of action as to one theory of the case, the redhibition claim, under one demand. See 243 So.2d 112 (La.App. 3rd Cir. 1971). The sustaining of the exception of no cause of action did not dismiss the proceeding. A judgment of dismissal of part of a demand based upon a consideration of theories of the case, as opposed to complete *344 judgment based upon full consideration of the plaintiff's entire petition, was not a final ruling in the case and was improper.
Regarding those issues which the trial court believed not to be before it, it could have limited plaintiff's evidence on the redhibition issue to that proffered at plaintiff's own expense. I am of the opinion that this Court is not bound by the erroneous action of the trial court and the court of appeal sustaining an exception of no cause of action only as to one theory of the case under a single demand. See Bailey v. Texas Pacific Coal and Oil Company, 134 So.2d 339 (La.App. 3d Cir. 1961) and City of Natchitoches v. State, 221 So. 2d 534 (La.App. 3d Cir. 1969) and cases cited.
In the appellate court opinion we consider on writs, the majority treats plaintiff's suit against both the manufacturer and the seller in terms of negligence or as an action under La.Civil Code article 2315. While there are allegations of negligence on the part of the defendant seller based upon damage resulting from improper repair, all other issues fall under the La.Civil Code articles relating to redhibition.
Although McEachern v. Plauche Lumber and Construction Co., 220 La. 696, 57 So.2d 405 (1952) stated that the vendor and the manufacturer were not liable in solido under a claim for redhibition, that holding no longer has validity. It was overruled sub silentio in Breaux v. Laird, 230 La. 221, 88 So.2d 33 (1956); Media Production Consultants, Inc. v. Mercedes-Benz of North America, 262 La. 80, 262 So.2d 377 (1972) and Rey v. Cuccia, 298 So.2d 840 (La.1974). McEachern treated the buyer's action against the manufacturer as a subrogation to the seller's rights against the manufacturer. I do not believe this theory to be consonant with the Louisiana Civil Code. I am of the opinion that the buyer's right to sue all prior parties in the chain of sale back to the manufacturer stems from the provision of La.Civil Code article 2461:
The sale of a thing includes that of its accessories, and of whatever has been destined for its constant use, unless there be a reservation to the contrary." (Emphasis supplied.)
See Barham, "Redhibition: A Comparative Comment", 49 Tul.L.Rev. 376 (1975).
In Louisiana, the manufacturer is presumed to know the vice of the thing he has made. The prescriptive period of one year begins from the date of the discovery of the vice, for the vendor who knows of the vice in the thing and for the manufacturer who is imputed to know of the vice. La. C.C. art. 2546. There remains for the vendor, who does not know of the vice in the thing, the protection of a one-year prescriptive period from the date of the sale. However, the vendor has acquired as an accessory to the thing he purchased from the manufacturer for resale, a right to bring the action in redhibition against him one year from the date of the discovery of the vice. When the vendor delivers the thing to the vendee, the vendee has transmitted to him with the thing, the accessory right of action against the manufacturer.
Having concluded that different prescriptive periods apply to an unknowledgeable vendor and a manufacturer, a very serious question then presents itself when we conclude that they are solidary obligors of the vendee. Is the seller, who did not know of the vice in the thing, liable in solido with the manufacturer more than one year after the sale in a suit for redhibition brought within a year after the discovery of the vice? This is the question which should have been presented to this Court and which would have been presented to this Court if the courts below had not improperly sustained the exception of no cause of action levelled at that part of plaintiff's petition alleging his demand could be justified in redhibition.
In Media Production this Court firmly stated a policy of consumer protection in actions in redhibition. Should this Court protect the consumer to the extent of placing *345 the unknowledgeable vendor in the same position as the manufacturer or the vendor who knew of the vice of the thing by holding them solidarily bound more than a year after the sale? Application of that public policy declaration to facts of the present case would be in contradiction of the positive pronouncements in the Louisiana Civil Code setting forth the two separate prescriptive periods. The theory of subrogation will not bridge the gap between the policy consideration and the codal provisions. Subrogation is itself attached to the right of the buyer against the seller, and when the right against the seller has prescribed, the rights of subrogation to actions against prior vendors and the manufacturer have also prescribed. The theory of transmission of an accessory right, standing alone, is subject to the same objection.
The best solution to the above problem can come from the theory that a "professional vendor" who deals in particular items for sale to the extent that the public looks upon him, the merchant, as representing the quality of the thing, is equated to the position of a manufacturer. In such a case the public is led to believe that the vendor is completely knowledgeable of good and bad products because he makes his livelihood from repetitive sales of these items. The consumer may never know the manufactureroften does not care to know the manufacturerfor the consumer has, by mass communication, been led to believe that the seller guarantees the quality of the thing sold as though he were a manufacturer. As he holds out to the consumer his expertise in certain wares, merchandise or other things, the law should impute to the commercial merchant knowledge of defects in the things he sells. In modern commerce where the retail merchant has effectively insulated the buyer from the manufacturer through numerous middle men, there are valid reasons for imputing to the "professional" commercial merchant or vendor knowledge of any redhibitory vice in the thing he sells. The modern merchant not only hawks his wares, but he also constantly sells himself and people buy on the basis of the reputation held out by the merchant. His products have come through wholesaler, distributor, shipper and manufacturer in many cases. The things he sells have come from all over the world. The commercial vendor should be responsible for selecting reliability when he chooses the sources of his goods. The merchant can protect himself for recourse when there appears a vice in the thing sold. The consumer is too often left only with recourse against his immediate vendor.
Upon a proper record showing these factors, I am of the opinion that the commercial merchant should fall into the category of the vendor who knew of the vice and the manufacturer who is imputed to have known of the vice. Our Civil Code is a code governing private law. Although we must apply the code to commercial law as well, we should not blindly apply the same customs and factors to both private and commercial transactions.