434 So.2d 120 (1983)
Frank J. D'ANGELO
v.
Patrick J. POCHE.
No. 82-CA-47.
Court of Appeal of Louisiana, Fifth Circuit.
February 7, 1983.
Writ Denied April 5, 1983.
Stephen J. Laborde, Metairie, for plaintiff-appellee.
Frank Sloan, Metairie, for defendant-appellant.
Before KLIEBERT, CURRAULT and DUFRESNE, JJ.
*121 KLIEBERT, Judge.
Mr. James D'Angelo (buyer) filed a petition for a reduction of the purchase price on the sale of a house located at 611 Carrollton Street in Old Metairie, which he acquired from Patrick Poche (seller) in August of 1979 for $49,000.00. The action was based on an alleged defect in the house, i.e., its propensity to flood. On a finding that the house in fact had a defect and that the seller was in bad faith for failing to divulge the defect to the buyer, the trial judge awarded to the buyer $9,800.00 as a reduction in purchase price plus attorney fees of $3,420.00. The seller brought this suspensive appeal contending (1) the buyer failed to prove the existence of a defect prior to the sale by the buyer to the seller, or alternatively (2) if there was a defect it was obvious to anyone on casual examination and, hence, not cause for a reduction of the purchase price, and (3) the seller was not in bad faith. The buyer neither appealled nor answered the appeal. We do not agree with the seller's contentions and, hence, affirm the trial judge.
The house in question here was a single-story one family residence constructed on a slab. The seller had acquired the house in 1958 and lived there until 1969. From 1969 to the time of the sale the house was rented. The former carport, with the slab constructed at ground level, was enclosed and used as a den and laundry room. Sometime before the sale, the slab in this area was raised to the height of the slab in the remainder of the house.
Under the insurance regulations, for flood insurance purposes, houses are zoned as flood zone "A" thru "C", with "A" being the zone most susceptible to flooding. The house in question here was designated as zone "C", the zone least susceptible to flooding. Although there was a dispute as to how noticeable, the witnesses testifying to same generally agreed the street on which the house faced was higher than the floor level of the house. There is some indication in the record that the lot was lower than bordering properties.
According to the testimony of the buyer and his spouse, from the time of purchase to the summer of 1980 the house was flooded on at least three occasions. Had they known the house had a propensity to flood, they would not have purchased it. The seller admitted the house had flooded in May of 1978 and that on occasions prior to his having raised the slab level in the den and laundry room area, rain water would be blown in, under and around the doors going into the laundry room and would accumulate in small puddles on the floor. Except for the 1978 flooding and the occasional water in the den and laundry room area from wind blown rain, he denied having any knowledge of flooding in the remainder of the house. He did not inform the buyer of the flooding prior to the sale. In general, however, the testimony of the seller was disputed by his neighbors and former tenants.
Mrs. Chapoton, who occupied the house during the period 1973 thru 1976, appeared as a witness on behalf of the buyer. She testified and produced pictures to support her testimony that the entire house was flooded by several inches of water in 1976 and that the seller had visited the house during the flood and was aware of the extent of the flooding. She also stated that on other occasions (at least twice) water entered the den and laundry room area (other than by being wind blown around the door), and on those same occasions water would seep into other areas of the house through the walls. Mrs. Collongues, a niece and tenant of the seller from 1976 thru 1978, testified to a general flooding in 1978 and on several occasions (about five) had water in the den and laundry room area, but of a wind driven rain as opposed to rising water on the ground.
Mrs. Kraft, who lived in a house, constructed on a slab directly across the street from the house in question here, testified that she recalled flooding of the house on several occasions prior to the sale to the buyers here and on at least two instances subsequent to the sale. Mrs. Smith, a neighbor, testified to the house flooding on several occasions while occupied by the seller *122 and that she saw him sweeping water out of the front door and the door out of the laundry room on several occasions.
It was generally agreed that most of the houses in the block were built on piers rather than slabs and, hence, not affected by the floods which inundated the house involved here. However, none of the houses in the neighborhood which were constructed on slabs (there were at least two in the same block) had flooded even in the so-called 100 year flood of May 1978.
Louisiana Civil Code Article 2520 defines the action redhibition as follows:
"Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
and Article 2541 provides for the action in quanti minoris, that is, for reduction in purchase price, as follows:
"Art. 2541. Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."
In either instance, whether the action be one in redhibition or for reduction of the purchase price, the following provision of La. Civil Code Article 2545 is applicable:
"Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."
Our brothers in other circuits have previously held that an unreasonable propensity to flood is a redhibitory defect which gives rise to an action in redhibition and in quanti minoris. Cox v. Moore, 367 So.2d 424 (2nd Cir.1979); Davis v. Davis, 353 So.2d 1060 (2nd Cir.1977); Ford v. Broussard, 248 So.2d 629 (3rd Cir.1971).
There is ample evidence in this record to support the trial judge's conclusion the house in question has a propensity to flood and, hence, has a redhibitory vice and that this was known by the seller prior to the sale and he neglected to divulge it to the buyer at the time of the sale. Hence, we cannot say the trial judge erred as a matter of fact or as a matter of law in so holding.
It is true, as stated by the seller, that in an action for quanti minoris involving the sale of realty, under some prior jurisprudence [See Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (La.1959) and McEachern v. Plauche Lumber & Construction Co., 220 La. 696, 57 So.2d 405 (La. 1952)], the measure of recovery has been said to be the amount necessary to convert the unsound structure into a sound one. The reason generally given for the exception to the general rule that the measure of recovery is the difference between the value of the thing sold in its defective condition and its value as warranted cannot be applied in cases of this sort inasmuch as the difference in the value is not readily or easily ascertainable unless there has been an immediate resale of the property. Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (La.1963) and Bustamante v. Manale, 397 So.2d 842 (4th Cir.1981).
The prior jurisprudence, however, is distinguishable on the facts from the ones involved here. In the prior cases, the defects could be repaired and the repairs, once made, would convert the structure from an unsound one to a sound one. In the present case, although the damage from a flood can be repaired, the repairs would not convert the house from a house that flooded to one which does not flood. The defect, i.e., its propensity to flood, does not render the house useless or altogether unsuited for use as a home, but rather diminishes the price a knowing buyer would pay for the house. Hence, the measure of recovery here is properly the difference between the price a buyer would pay for a similar house without the defect and the price the buyer would pay knowing the house has a propensity to flood. See Davis v. Davis, supra.
*123 Mr. Epp, an expert appraiser, appeared on behalf of the buyer and Mr. Humbrecht, also an expert appraiser, appeared on behalf of the seller. They both used the cost approach to value the method of appraisal and both arrived at the approximate same value for the house, absent the defect, and supported that value by sales of comparable houses. Mr. Epp, however, applied a penalty to the market value ascertained by the cost approach method for the house in question here, whereas, Mr. Humbrecht did not. As a predicate to his appraisal, Mr. Epp assumed the house had a propensity to flood from other than natural disasters, such as, 100 year floods and floods from hurricanes. He then made a study of the effect on market value of the houses located on Coubra Drive in "Bayou Estates" on the west bank of Jefferson Parish, an area in which he concluded from public knowledge and general publicity, some houses, though not all, had a propensity to flood. From the study, he concluded houses on Coubra Drive, which had a known propensity to flood, generally sold for 20% less than similar houses in the subdivision which did not have such a defect. Thus, he established 20% as a reasonable penalty factor for the known propensity of the house to flood. The trial judge accepted Mr. Epp's opinion over that of Mr. Humbrecht who refused to apply a penalty even under the assumption the house had a known propensity to flood. We see no difference in kind from an appraisal method which applied a penalty for a known propensity to flood and one in which a penalty is applied (or an adjustment is made) to a comparable because it is located adjacent to a power line or a pipe line or where an addition to a comparable is made because the house fronts on a tree-lined residential street as opposed to one which fronts on a railroad right of way. Therefore, we cannot say the trial judge erred in using the reduction in the market value of the house due to its propensity to flood as the measure of the award to the buyer rather than the cost of doing whatever may be necessary to prevent future flooding.
The buyer argues for the recovery of damages for mental anguish. As noted above, however, he failed to appeal or answer the seller's appeal. Consequently, we cannot modify the judgment to make it more favorable to him. La.C.C.P. Article 2133.
The seller argues the attorney fees awarded to the buyer are excessive and should be reduced because they were awarded without the buyer's attorney testifying as to the services rendered. Although the time expended may have been on the high side (attorney fees were computed as 57 hours at $60.00 per hour), considering the record in this case and the fact that an appeal was taken, we cannot say the award of $3,420.00 for attorney fees is excessive. The trial court is capable of assessing attorney fees without proof of the value thereof where such services are performed under the eye of the court. Thigpen v. Thigpen 231 La. 206, 91 So.2d 12 (La.1956). Further, in making awards for attorney fees, the trial court is vested with great discretion, the exercise of which will not be interfered with save in a case of clear abuse. State of Louisiana through Department of Highways v. Terrebonne, et al., 349 So.2d 936 (1st Cir.1977). Accordingly, the judgment of the trial court is affirmed. All costs of the appeal to be borne by the seller.
AFFIRMED.