430 So.2d 1207 (1983)
Robert and Rigmore MILLSPAW
v.
Mr. and Mrs. James R. KNIGHT, et al.
No. 82 CA 0610.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
R. Bruce Macmurdo, Baton Rouge, for plaintiffs-appellees Robert and Rigmor Millspaw.
M. Aubrey McCleary, Jr., Baton Rouge, for third party defendants-appellees Willie & Willie Contractors, Inc., John E. Henry, d/b/a John E. Henry Builders and Murlin D. Willie, Inc.
*1208 David L. Dawson, Jr., Baton Rouge, for defendants-appellants Mr. and Mrs. James E. Knight.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.
The issue in this redhibition suit is whether or not the condition of residential property purchased by plaintiffs was defective thus warranting a reduction in price.
The following facts have led to this litigation. Plaintiffs Robert and Rigmore Millspaw purchased from defendants Mr. and Mrs. James Knight, a home on South Flannery Road in Baton Rouge. (The legal description of the property is Lot 50, Sherwood Manor.) The sale was arranged by a realtor, Marjorie Mackey, and was perfected on or about November 30, 1979, for the sum of $105,000. Within the next few months a great deal of rain fell and the Millspaw's back yard remained flooded. Testimony and photographs at trial showed that during the spring of 1980 the yard was virtually unusable due to the excessive amount of standing water. Dr. Millspaw attempted to remedy the situation himself by taking various measures, to be discussed below. Meanwhile, he requested Mrs. Mackey to inspect the yard.
Apparently no agreement could be reached between the parties as to who was responsible for the necessary repair work. On July 2, 1980, the Millspaws, through their attorney, made a formal tender of the property and in November of 1980 filed suit against the Knights.[1] The Millspaws answered and filed a third party demand against Willie and Willie Contractors, Inc.,[2] and John E. Henry, d/b/a John E. Henry Builders, the alleged owners and builders of the residences adjacent to the property in question. After trial on the merits the court dismissed the third party demand and rendered judgment against defendants for $7,823.82 plus interest and court costs. Defendants then filed this suspensive appeal and plaintiffs have answered the appeal.
Appellants present two issues to be considered on appeal. First, appellants argue the trial court erred in concluding the condition of the yard was a redhibitory defect and in reducing the purchase price. Second, appellants argue the court erred in dismissing the third party claim against Murlin D. Willie, Inc.
A redhibitory defect is one which renders a thing absolutely useless or its use so inconvenient and imperfect that it must be presumed the purchaser would not have bought the thing had he known of the defect. La. Civil Code art. 2520. In order to be successful in a suit for redhibition (or in quanti minoris),[3] the plaintiff must prove that the thing contained a redhibitory defect;[4] that the defect existed at the time of the sale; and that the defect could not have been discovered by ordinary inspection. See Prat v. Heymann, 410 So.2d 343 (La. App. 4th Cir.1982); Jofforion v. Leglue Buick, Inc., 399 So.2d 762 (La.App.3d Cir. 1981). It is noted a plaintiff in a redhibition suit need not prove the cause of the defect. See Weber v. Mathews, 367 So.2d 1326 (La.App. 4th Cir.1979).
*1209 As to the first element of proof, various evidence was introduced showing the condition of the yard constituted a redhibitory defect. The testimony on this issue can be summarized as follows: Dr. Millspaw testified he had informed Mrs. Mackey he wanted a house that was not located in a flood plain and one that did not have a drainage problem. Before the act of sale was passed Dr. Millspaw visited the Department of Public Works office and checked the flood plain map to make sure the house was not in a flood plain. (It was not.) Photographs taken in March, April and May of 1980 were offered in evidence and revealed a yard which was inundated with water. Crayfish holes were visible in some photographs. Other photographs showed rotten bottoms of wooden posts, caused allegedly by the posts standing in water on the carport.
The Millspaws' description of the yard was corroborated by several witnesses. Jarvis Poche, the current owner of adjacent Lot 51, said he had observed the condition of the yard in the spring of 1980 and found it to be very wet and boggy. Howard Stewart, a plumber, testified he was called to the Millspaw house in December of 1980 and asked to help correct the drainage problem. He described the back yard as "soggy" and noted "it never would dry up too much after a rain." He said he observed standing water at one time after a rain. He installed two catch basins which he felt alleviated the problem to a great extent. Victor Booty, a supervisor in the drainage division of the Department of Public Works, stated he had inspected the yard in March of 1980 and found it to be "a big mudhole, a pond."
Dr. Millspaw testified as to the various measures he took to correct the drainage problem. He dug a swale ditch at the rear of the property, had his yard regraded, had underground catch basins and pipes installed, and finally, contracted the city to dig an open ditch along the side of his lot. He testified that aside from hiring several professionals to help remedy the problem, he himself spent approximately 100 to 150 hours on the project. Dr. Millspaw stated he had examined the home prior to his purchase and noticed no indications of drainage problems.
Mr. and Mrs. Knight both testified they had never had any trouble with standing water in the back yard during the three years in which they lived in the house. Mr. Knight stated the yard always dried out within a day unless it continued to rain. Photographs were introduced into evidence showing the Knight children enjoying the yard which was dry and grassy. One neighbor and several relatives of the Knights testified they were familiar with the Knights' back yard and had not been aware of any drainage problems.
Michael Defelice, accepted by the court as an expert real estate appraiser, stated that as of December 1979, if the house had had no drainage problem, it would have had an estimated value of $106,000. He examined the property after all of Dr. Millspaw's work was completed and concluded the property still had a "functional incurable obsolescence" which caused the property to depreciate approximately $5,000 in value. Based on the information supplied by Dr. Millspaw, Mr. Defelice estimated the total cost of repair to be approximately $2,500.
In his oral reasons for judgment the trial court acknowledged it was faced with a difficult case and commented as follows:
"The court must decide the case based upon a preponderance of the evidence. Considering all of the exhibits, the expert testimony, the Court is of the feeling that if you would look at the May, 1980, photographs presented into evidence as P-6, and consider the fact of the work that the plaintiff was required to do, and looking at the picture of the lot in question, the Court is of the opinion that you must conclude that something was wrong with the drainage of the residence. And the evidence indicates to the Court that that must have existed at the time of the sale. Further, the Court points out that there has been no proof whatsoever of any bad faith on the part of the defendants in this case. It's an unfortunate situation that *1210 apparently existed and made itself known shortly after the purchase of the property."
The court commented the case was one falling under articles 2531 and 2541 of the Civil Code.
We are in complete agreement with the trial court's conclusion. Plaintiffs proved by a preponderance of the evidence they suffered a serious drainage problem in the back yard and that the problem rendered the yard unusable for great lengths of time. Plaintiffs' testimony established they had been greatly concerned with purchasing a home and lot that were not subject to flooding or drainage problems. Therefore, we agree with the trial court that the condition of the lot was such as to constitute a redhibitory defect[5] and as will be discussed below, we find the $7,823.82 reduction in price appropriate.
Concerning the other elements of proof, appellants do not seriously contend plaintiffs failed to prove the defect was not discoverable by ordinary inspection. Because of the nature of the problem, it would have been virtually impossible for the Millspaws to have discovered the drainage problem unless at the time of inspection there had been a recent heavy rainfall.
Appellants argue, however, that plaintiffs have failed to prove the defect existed at the time of the sale. A defect which appears within three days of the sale is presumed to have existed before the sale. Civil Code art. 2530. Even if the defect appears more than 3 days after the sale a reasonable inference may arise, in the absence of an intervening cause or other explanation, that the defect existed at the time of the sale. Ticheli v. Silmon, 304 So.2d 792 (La.App.2d Cir.1974). See also Rey v. Cuccia, 298 So.2d 840 (La.1974).
Testimony by various witnesses established Dr. Millspaw became aware of the drainage problem within one or two months of moving into the home. Although no exact date was proved, all parties agreed the problem became evident when the "rainy season" began. We find the defect was discovered within a reasonably short period of time. When the Millspaws moved into the house on December 1, 1979 (one day after the sale), all construction on the adjacent lots was completed. There is no evidence whatsoever of any later changes made either on the Millspaw property or the surrounding properties. Therefore there is no explanation as to why the drainage problem would have developed after the sale. In the absence of evidence of some intervening cause, we agree with the trial court that there is a strong inference here that the defect must have existed as of the date of the sale. The trial court apparently drew this inference from the facts proved at trial and, because it is a reasonable one, we decline to disturb this conclusion.
The next issue is whether or not the court erred in dismissing the third party claim against the original owners of the two adjacent lots. Without further explanation the trial court stated simply:
"The court is further of the opinion that the third-party plaintiff has not proved the demand against the third-party defendants and dismisses the thirdparty demand."
We agree third-party plaintiffs did not prove by a preponderance of the evidence that the third-party defendants caused the drainage problem. It was established at trial that the residences on the adjacent lots were completed at the time the Millspaws purchased the home from the Knights. Murlin Willie testified his lot (Lot 49) was designed to drain away from the lot in question. John Henry testified he graded his lot (Lot 51) himself. Because the elevation of the driveway on Lot 50 was higher than Lot 51, he drained Lot 51 away from Lot 50. He stated he had done nothing that would have increased the flow on Lot 50, nor did he do anything that would have *1211 impeded the flow of water away from Lot 50. Mr. Knight testified he had not noticed any additional water on his lot after the house was completed on Lot 51. He did notice a small increase in amount after the completion of the house on Lot 49. The evidence as a whole shows plaintiffs simply failed to prove the owners of the adjacent lots caused the drainage problem on Lot 50.[6]
Appellees have answered the appeal and contend the award is insufficient because it did not compensate them for their aggravation, inconvenience and embarrassment over the loss of use of the yard. They argue that the costs of the repairs, alone, is an insufficient amount for damages. They argue that when a reduction of price is awarded, the correct measure of damages is the difference between the sales price and the price a reasonable buyer and seller would have agreed upon if they had known of the defects. See Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4th Cir.1974), writ denied, 303 So.2d 186 (La. 1974).
We are in complete agreement with this proposition. As noted in Menville, however, there is no mathematical formula for arriving at the price that would have been paid had the defect been known. Therefore, based upon the facts and circumstances of the case, the trial court is granted reasonable discretion in assessing the amount of recovery in an action in quanti minoris. Lemoine v. Hebert, 395 So.2d 353 (La.app. 1st Cir.1980). We point out the trial court did not simply award damages in an amount equal to the cost of repair. ($2,500.) He also awarded $5,000 which represents the devaluation of the house caused by the poor drainage of the back yard. We find that this total sum of $7,500[7] is a reasonable amount and could be said to theoretically represent what a reasonable buyer and seller would have agreed upon had they known of the condition of the back yard. Therefore, we find no abuse of discretion and decline to disturb the award.
Appellees argue further they are entitled to attorney fees. This claim must be rejected because we agree with the trial court's conclusions that the defendants were good faith sellers. Only bad faith sellers and manufacturers, who are presumed to be in bad faith, are required to pay attorney fees. See La.Civ.Code arts. 2531 and 2545.
Plaintiffs further claim they are entitled to interest from date of formal tender rather than from date of judicial demand. This was allowed in Alexander v. Burroughs Corp., 359 So.2d 607 (La. 1978). However, we find Alexander distinguishable because in that case the sale was actually rescinded. In the present case there was no rescission but only a reduction in purchase price. The claim was not ascertainable on the date of formal tender. Therefore, we see no reason to deviate from the traditional rule that in an action in quanti minoris the interest should run from date of judicial demand. Heap v. Weber Const. Co. of Louisiana, Inc., 407 So.2d 799 (La.App. 4th Cir.1981).
For the foregoing reasons, we find no error in the trial court's conclusion that there was a redhibitory defect and that plaintiffs were entitled to a $7,823.82 reduction in purchase price. We agree third-party plaintiffs have failed to prove any fault of third-party defendants. Therefore the judgment of the trial court is affirmed. Costs are to be paid by appellants.
AFFIRMED.
NOTES
[1] The petition was entitled "Petition in Tort for Misrepresentation and for Redhibition or Alternatively Reduction in Price."
[2] The third party demand was later amended to add Murlin D. Willie, Inc. as a third party defendant and it was stipulated this entity had constructed the house on adjacent Lot 49. Willie and Willie Contractors, Inc. was dismissed on a motion for a directed verdict. It is obvious from appellants' brief the claims against Willie and Willie Contractors, Inc. and John E. Henry have been abandoned, appellants contending if there was a drainage problem it was caused by Murlin D. Willie, Inc.
[3] An action in quanti minoris is governed by the same rules as suits in redhibition. See Civil Code art. 2544.
[4] Although by definition, a redhibitory defect is one that would entitle the purchaser to a rescission of the sale, the term is often used in reference to a defect which merely warrants a reduction in price. See Bermes v. Facell, 328 So.2d 722 (La.App. 1st Cir. 1976) and Sorrells v. Stevens, 392 So.2d 164 (La.App. 1st Cir. 1980).
[5] A house's susceptibility to flooding has been held to be a redhibitory defect. See Davis v. Davis, 353 So.2d 1060 (La.App. 2d Cir. 1977).
[6] As previously noted, appellants argue in brief that if there was a drainage problem, it was caused by Murlin D. Willie, Inc., owner of Lot 49.
[7] The remainder of the judgment represented an award for a defective sink drain and garbage disposal. Appellants do not contest this award on appeal.