BOUTALL, Judge.
This is a suit for redhibition or breach of warranty. From a judgment in favor of the defendants, the plaintiff has taken this appeal. We affirm.
On October 15, 1979, the plaintiff, John Cotton (“Cotton”) purchased a tractor manufactured by Kenworth Truck Company (“Kenworth”) and equipped with a Cum-mins diesel engine, from the Whitlow Truck Center, Inc. (“Whitlow”). The tractor was to be used in sand and gravel hauling and cost $50,700. Cotton took the vehicle back to Whitlow for certain minor corrections on November 5, 1979, and January 21, 1980.
In November Cotton complained of excessive oil consumption and loss of power on acceleration, for which he was referred to Cummins Sales & Service (“Cummins Sales”), a factory authorized dealer for service on Cummins engines. The dealer calibrated the fuel pump, replaced the dipstick, and steam cleaned the engine. Cotton was told that it was too early to “go into the engine” and was given oil consumption sheets and told to record oil added and oil changes. Cotton did not return to Cum-mins Sales until June 5, 1980, when the truck developed a water pump problem. Cummins Sales removed and rebuilt the water pump.
On June 20,1980, the event which precipitated this litigation took place. The engine “locked up” or “seized” when Cotton was driving in St. Tammany. The vehicle was towed to Cummins Sales, which determined that the problem was multiple bearing failure. Although the engine was covered by a Cummins warranty for 100,000 miles, the local company told him the bearings would have to be sent away for analysis to determine whether this was a war-rantable failure. If not, Cotton would have to pay for the repairs, estimated to cost $6,815.00. On July 11, 1980, Cotton had New Orleans Truck Center tow the tractor away from Cummins Sales and do the repairs at a cost of $7,382.99.
Cotton filed suit on October 15, 1980 against Cummins Sales & Service, Inc., Kenworth Truck Company, and Whitlow Truck Center, Inc. for redhibition and violation of warranty. He later amended to substitute the engine manufacturer, Cum-mins Engine Company (“Cummins”) in place of Cummins Sales & Service, Inc.[1] Whitlow filed Chapter 11 bankruptcy proceedings and was severed from the suit for the duration of the automatic stay. Trial was held March 11 and March 18, 1983. On May 2, 1983 judgment was rendered in favor of the remaining defendants, Cum-mins and Kenworth, and against the plaintiff, dismissing his demands and casting him for all costs. After the plaintiffs motion for a new trial was denied, he filed for a devolutive appeal.
The issues before this court are: 1) whether the plaintiff carried his burden of proof for redhibition or reduction in price; 2) whether there was a breach of warranty by Cummins or by Kenworth.
*196 The applicable law is found in the Louisiana Civil Code, Book III, Title VII, of Sale, Section 1, “Of the vices of the thing sold, which give occasion for the redhibi-tory action,” articles 2520, 2530, 2531; Section 2, “Of the vices of the thing sold which occasion a reduction in price,” articles 2541 and 2543; and Section 3, “of the vices of the things sold which the seller has concealed from the buyer,” article 2545.
A succinct summary of the jurisprudence on the burden of proof in redhibition or quanti minoris appears in Millspaw v. Knight, 430 So.2d 1207 (La.App. 1st Cir. 1983), at 1208:
“A redhibitory defect is one which renders a thing absolutely useless or its use so inconvenient and imperfect that it must be presumed the purchaser would not have bought the thing had he known of the defect. La. Civil Code art. 2520. In order to be successful in a suit for redhibition (or in quanti minoris), the plaintiff must prove that the thing contained a redhibitory defect; that the defect existed at the time of the sale; and that the defect could not have been discovered by ordinary inspection. See Prat v. Heymann 410 So.2d 343 (La.App. 4th Cir.1982); Jofforion v. Leglue Buick, Inc., 399 So.2d 762 (La.App. 3rd Cir. 1981). It is noted a plaintiff in a redhibition suit need not prove the cause of the defect. See Weber v. Mathews, 367 So.2d 1326 (La.App. 4th Cir.1979).”
See also Rey v. Cuccia, 298 So.2d 840 (La. 1974).
Cummins Sales contends that the bearing failures were due to “oil starvation” and improper care of the vehicle, which had run 49,608 miles when the engine stopped. Cotton’s position is that a redhibitory defect in the engine had caused it to lose oil.
In the trial judge’s reasons for judgment, he said:
“The vice or defect spoken of [in LSA-C.C. art. 2530] must be proved to have existed prior to sale by a preponderance of the evidence. While there has been some evidence introduced as to a seizure of plaintiff’s engine, it is not of sufficient weight whereby it may be adduced that said seizure was more probably than not due to a vice or defect present prior to sale.”
The record clearly reveals that Cotton’s engine failed because of a lubrication problem. However, as plaintiff, Cotton had the burden of proof that the problem was caused by a defect existing at the time of the sale or that the problem was included in the warranty. We agree with the trial judge that Cotton failed to discharge his burden.
Stephen Milano, the service manager for Cummins Sales, testified as an expert in truck diesel engines and as a fact witness. He had supervised the mechanic who broke down the engine after the truck was towed in on June 19 and examined the engine at every step. He stated that they removed the oil pan and found it contained about 6 gallons of oil that was fairly clean. He personally checked for oil leaks and water leaks. They removed the oil pump, checked all the oil drillings they could reach without taking the engine from the truck, and blew air through the lubricating system. They found the entire oil system to be working. They examined the main bearings. The only damage found in the engine was to the six rod bearings, a crankshaft and a connecting rod. The bearings showed signs of heat, indicating oil starvation or lack of lubrication at one time. Milano stated that the only time Cotton complained of excessive oil consumption was on November 26,1979, when the forms were given to him to record oil additions and changes. Cotton stated he mentioned an oil problem when he came in with the water pump problem on June 5.
The plaintiff’s expert, Ryan Uhlich, had not been listed as a witness in the pretrial order and was allowed to testify only in rebuttal. Uhlich had worked in the engine business for 28 years. He was qualified as an expert in the field of diesel engines, with a subspecialty in failure analysis. Uh-lich had not examined the engine before New Orleans Truck Center repaired it. Based on his hearing the testimony, inspec *197 tion of the rod bearings that had been removed from the truck, and the repair invoices and depositions, Uhlich also believed the engine had failed because of inadequate lubrication. He put forth four possibilities as to the cause: 1) the bearings having been damaged from a lack of prelubricating when tested at the engine assembly plant, or at the truck dealership or at a later time; 2) a faulty bypass valve or one that was stuck in the open position so that oil did not reach the vital parts; 3) a faulty water pump that resulted in contaminated lube oil; or 4) the engine’s having been run with insufficient oil. Uhlich felt the most likely cause was that the bearings had been damaged during testing at the factory or after being placed in the truck chassis at the truck dealership.
The credibility of the witnesses in this case is crucial, and the trial judge is in a better position to make such a judgment than we are. Stephen Milano had actually supervised the dismantling of the engine and had seen all the components. His testimony negated all possibilities suggested by the plaintiffs expert other than the vehicle’s having been run with insufficient oil. Ryan Uhlich could only speculate on the cause of the engine failure, as he had not seen the engine in its damaged state. We note that the plaintiff did not call a witness from the New Orleans Truck Company, which eventually did the repairs. We agree with the trial judge that the testimony of the person who actually examined the engine outweighs that of the expert who did not.
The plaintiff’s argument that the repair was covered under the Cummins warranty is without merit. The warranty states under “Limitations” that:
“Cummins is not responsible for failures resulting from Owner or operator abuse or neglect such as: operation without adequate coolant, fuel or lubricants; overfueling; overspeeding; lack of maintenance of lubricating, cooling or air intake systems; improper storage, starting, warm-up, run-in or shut-down practices.”

“Before a claim for excessive oil consumption will be considered, Owner must submit adequate documentation to show that consumption exceeds Cummins published standards.”
Milano stated unequivocably that Cotton had never returned the completed oil consumption records which were given to him in November, 1979, and were to be returned after he had driven the vehicle 10,-000 to 15,000 miles. Cotton testified that he returned the forms on June 5, 1980.
The Kenworth warranty, signed by Cotton, clearly excepts “engines, automatic transmissions, tires, wheels, fifth wheels and trade accessories, which are warranted to you by their respective manufacturers.”
For the reasons stated above, we find the judgment appealed from to be correct and, accordingly, we affirm.
AFFIRMED.

. Classic Manufacturing, Inc., a custom accessory manufacturer, was added as defendant but dismissed on the first trial day.