521 So.2d 1229 (1988)
Lynn and Terry TRUELOVE, Plaintiffs-Appellees-Appellants,
v.
Marvin H. EASLEY, et al., Defendants-Appellants-Appellees,
Dallas H. DeSoto, et al., Third Party Defendants-Appellees.
No. 87-110.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
Rehearing Denied April 11, 1988.
Writs Denied June 2, 1988.
*1230 Bolen & Erwin, Greg Erwin, Alexandria, for plaintiffs-appellees-appellants.
Sooter & Foote, Victor Sooter, Alexandria, for defendants-appellants-appellees.
Ralph Kennedy, Alexandria, defendant-appellee.
Before GUIDRY, YELVERTON and KNOLL, JJ.
GUIDRY, Judge.
Plaintiffs, Lynn and Terry Ann Truelove, filed a suit in redhibition against Marvin H. Easley, their vendor, seeking a diminution in price and attorney's fees for the sinking and cracking of the foundation of the house at 6518 Windy Drive, Pineville, Louisiana, which the Trueloves had purchased from Easley. Easley third partied Dallas and Eula DeSoto, his vendors and the builders of the house, along with Mike Dunn, a contractor who had made extensive repairs to the house following a fire. Plaintiffs subsequently amended their petition to add the DeSotos and Dunn as defendants.
The trial judge rendered judgment in favor of the Trueloves and against defendant, Easley, ordering a reduction in price in the sum of $5,940.00, being the amount expended by plaintiffs to cure the foundation defect. The court denied plaintiffs' demand for attorney's fees and dismissed all claims against the DeSotos and Dunn. Plaintiffs appealed seeking a greater reduction in price and attorney's fees. Easley also appealed urging that the trial court erred in: (1) finding redhibitory defects as to appellant, Easley; and, (2) failing to grant him indemnity and attorney's fees against third party defendants, the DeSotos and Dunn. We amend to award plaintiffs attorney's fees and otherwise affirm.
We have carefully examined the record in this case and find that the trial court, in excellent reasons for judgment, succinctly and accurately set forth the facts and disposed of all issues presented, except as concerns plaintiffs' demand for attorney's fees. Accordingly, we are pleased to adopt, in part, the learned trial judge's reasons for judgment as our opinion on appellate review.
"In this case, plaintiffs (Truelove), alleging a redhibitory defect in their home sued their vendor (Easley) for a reduction in the purchase price. Easley, in turn, filed a third party demand against his vendor, who was also the original builder of the home, (DeSoto) and against Dunn, who had rebuilt the home for Easley after it was substantially destroyed by a fire.
"The subject home was built by DeSoto during the period late 1979early 1980, as a speculation or `spec-house' for sale on the open market. At that time, Mr. DeSoto had been in the business of building homes for over thirty years and had constructed over four hundred residences. He testified that his profit on the subject home was in the neighborhood of $3,000.00. On February 1, 1980, he sold to [sic] home to Easley who lived in it until it was damaged by fire on July 29, 1981. On that date Easley was in the process of building a new home which was completed before reconstruction of the damaged residence, and, accordingly, Easley did not live in the subject home after the fire. He hired Dunn, who was then building his new home, to rebuild the fire damaged house. In doing so, Dunn was able to use the slab (concrete foundation), about 60% of the exterior brick veneer walls, some plates and studs that were not damaged by fire or smoke, and the chimney of the original house.
"On June 23, 1982, Easley sold the rebuilt home to Truelove. In April of 1985, almost three years after his purchase, Truelove was hosing out his carport and noticed the water draining to the back wall instead of out the front as it had in the past. Inspection of the exterior revealed water seeping out of the back carport wall between the bricks and the concrete slab foundation. He also noticed numerous vertical cracks in the slab. He testified that he inspected the outside of his home pretty *1231 often and had never noticed the cracks before. He was aware of problems other owners in the subdivision were having with `cracked-slabs' and consulted Mr. Philip Beard, a Civil Engineer. Mr. Beard advised him that his slab needed to be repaired. This was done by R.L. Phillips Foundations, Inc. at a cost of $5,940.00. The work was completed on May 7, 1985. Prior to doing the work, Truelove made demand on Easley for repair of the slab, which was refused.
"The Court finds as a matter of fact that the slab of Truelove's house was cracked and that the repairs performed were necessary. Whether or not the damage was caused by a redhibitory defect and whether or not the defect existed at the time of the sales from DeSoto to Easley and Easley to Truelove are the primary issues of this case.
"Louisiana law in redhibition provides for the avoidance of the sale or a reduction in the purchase price on account of some vice or defect in the thing sold that existed at the time of the sale. La.C.C. Art. 2520, 2530 and 2541. Plaintiff bears the burden of proving both the vice or defect and the fact that it existed at the time of the sale.
"In this case, there is no direct evidence of a defect in the slab or foundation of the house. There is direct evidence that a Type I slab would not be adequate for use on a soil having a Plasticity Index (P.I.) greater than a certain numerical value, but there is no evidence revealing the P.I. of the soil on which this slab was placed. There is some evidence that the slab of this house did not meet the requirements of a Type I slab, but there is no direct evidence that a slab is defective simply because it does not meet these requirements. There is direct evidence that damage occurred, but no direct evidence as to what caused it to occur.
"Nevertheless, it has long been held by our courts that proof of the existence of defects may be by direct or circumstantial evidence. It is not required that plaintiff negate all other possible causes for the damage in order to support his claim. Taken as a whole, the proof of the fact should be more probable than not. Moreno's, Inc. v. Lake Charles Catholic High School, Inc., 315 So.2d 660 (La.Sup.Ct.1975) [sic]. In this case the evidence preponderates in favor of the fact that the slab was defective at the time the damage occurred, there being no other explanation offered. And, in fact, this was the gist of the expert testimony; that the slab had to be inadequate or defective or the damage would not have occurred. Defendant has introduced no evidence to rebut this.
"Likewise, the evidence preponderates in favor of the fact that this slab was defective at the time the home was purchased by Truelove from Easley. Although almost three years elapsed from the date of sale to the date of discovery of the damage there is no evidence that the slab was in any way altered, weakened, overloaded or in any way adversely modified after this sale. Accordingly, the inference can be made that whatever defect caused the damage existed at the time of the sale. Therefore, Easley, as vendor, is liable to Truelove for the reduction sought in the purchase price. [Estopinal v. Bourshie, 420 So.2d 749 (La. App. 4th Cir.1982)].
"Both Truelove, by amended petition, and Easley, by Third Party Demand, joined DeSoto, the original builder, as a defendant in this lawsuit. Under the jurisprudence of our state the builder of a residential structure stands in the shoes of a manufacturer, and is presumed to know the vices or defects in the things he manufacturers. [Cox v. Moore, 367 So.2d 424 (La.App. 2d Cir. 1979), writ denied, 369 So.2d 1364 (La. 1979)]. Furthermore, a builder/seller is liable not only for the return or reduction in purchase price, but also, because of his presumptive knowledge of the defects, he is liable for damages and reasonable attorney's fees. La.C.C. Art. 2545. However, the fact that the builder and seller are the same person or entity does not relieve plaintiff of the burden of proving that the vice or defect existed at the time of the sale. In the case at hand, the presumption that was made that the vice or defect which caused the damage existed at the time of the sale to Truelove in 1982 cannot be made *1232 to show the existence of the defect in 1980 at the time of the sale from DeSoto to Easley. The house sold to Truelove in 1982 is not the same house purchased by Easley in 1980. There was an intervening occurrence, a fire, which in effect caused the house to be substantially rebuilt. The circumstantial evidence on which plaintiffs and third party plaintiffs necessarily rely to prove the defect existed at the time of the sale to Easley must exclude other reasonable hypotheses with a fair amount of certainty. Moreno's Inc. v. Lake Charles Catholic High Schools, Inc., (Supra).
"The evidence fails to do this. At the very least, there is disagreement among the experts as to whether or not the fire had any effect on the concrete slab itself. All agree that the fire, if intense enough, could affect the integrity of the slab. In this case, the intensity of the fire was apparently limited to the carport and adjacent kitchen area, with destruction to the remainder of the premises being secondary to water and smoke damage. Even the kitchen apparently did not receive intense heat as evidenced by the lack of fire damage to the cabinets and floor covering. The carport, on the other hand, received sufficient heat to cause the aggragate [sic] in the cement to pop, thus causing pock marks in the surface of the cement. In order to remedy this unsightliness, the carport was overlayed with two or three inches of concrete at the time the house was rebuilt. DeSoto points to this additional weight as one of the causes of the subsequent damage to the slab. Again, the experts disagree on whether such could be a causative factor of the subsequent damage.
"In weighing the testimony of the various experts, the court feels it significant that the major portion of the damage in the slab occurred in the area of the carport. Although there was testimony that some settling was observed in other areas of the house, the extent of the damage caused by this, if any, is not revealed by the record. Mr. Primeaux, a Civil Engineer appearing on behalf of plaintiff, noted the major damage to be along the south (rear of carport) and east (side of carport) walls. A bid proposal, submitted by R.L. Phillips, Inc. prior to doing the repair work, indicates foundation separations only in the carport area. A brick separation is noted in the area where the carport joins the main portion of the house. These facts coupled with the lack of unanimity among otherwise qualified experts leads the court to conclude that the effect or lack of effect the fire and concrete overlay had on the original slab is at best, inconclusive. While the evidence permits the inference of a defect in the slab at the time of the sale from Easley, no such inference is available at the time of the sale to him. As such, plaintiffs and third party plaintiffs have failed to prove that the concrete slab as originally constructed by DeSoto was defective; or that the house, which was the object of the sale, contained some vice or defect at the time of the sale by DeSoto.
"As proof of the fact that the slab, as originally constructed, was not adequate for the soil, Truelove and Easley rely on testimony to the effect that a Type I slab, which DeSoto admits he used, was not adequate for a soil have a P.I. greater than a certain level. The testimony of the two Civil Engineers, Mr. Primeaux for Truelove, and Mr. Beard for Easley, differed on the acceptable P.I. for a Type I slab. Mr. Primeaux was of the opinion that it should not be used where the P.I. exceeded 15, and Mr. Beard stated that it was acceptable on soil with a P.I. up to 25. Nevertheless, there is absolutely no creditable evidence as to what the P.I. was on this particular lot. All agreed that it could differ greatly within a subdivision and no witness could state with any degree of certainty what it was on the property in question. Mr. R.L. Phillips was the only witness who attempted to do so, and his conclusion was based on a field test performed by rubbing a piece of the soil between the palms of his hands and observing the diameter of the roll before it began falling apart. Mr. Beard denied that a P.I. could be obtained by such a test, stating that it was only useful to determine whether or not the soil was in fact plastic.
"Truelove and Easley then point to the fact that the slab involved failed to even *1233 meet the requirements of a Type I slab. As previously noted, there is no evidence that this fact, in and of itself, establishes a defect. Nevertheless, the evidence does not bear out these contentions. In proof of this plaintiffs rely on the testimony of R.L. Phillips who referred to four photographs marked Plaintiff's Exhibit 7-a, 7-b, 7-n and 7-o. In each of these photographs a tape measure is stretched from the bottom of the slab and reflects a distance of less than 18 inches to the top of the slab. A Type I slab requires a minimum debth [sic] of 18 inches. However, the top of the slab, as observed from the exterior, does not reveal the actual top of a slab on brick veneer construction. Such slabs have a brick shelf along the outer edge of the slab which is formed by attaching a two by four to the interior top of the form of the outside walls of the slab. This results in a shelf measuring approximately four inches wide by approximately two inches deep upon which the first layer of brick is layed. When this is added to the measurement shown in the photographs the approximate depth of the slab is 18 inches. These facts being considered it is the conclusion of the court that the slab, as originally constructed, was not per se defective."
Normally when a reduction of the purchase price is awarded, the correct measure of such an award is the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defects. Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4th Cir.1974), writ denied, 303 So.2d 186 (La.1974); Millspaw v. Knight, 430 So.2d 1207 (La.App. 1st Cir.1983). However, in Pursell v. Kelly, 152 So2d 36 (La.1963), n. 4 at 39, the Louisiana Supreme Court stated:
"In our recent cases (see Lemonier v. Coco, 237 La. 760, 112 So.2d 436, citing McEachern v. Plauche Lumber & Construction Co., Inc., 220 La. 696, 57 So.2d 405 and Wilfamco, Inc. v. Interstate Electric Co., 221 La. 142, 58 So.2d 833) it has been concluded that, in actions for quanti minoris involving the sale of realty, the measure of recovery is the amount necessary to convert the unsound structure into a sound one. The reason given for this exception is that the usual rulethat the measure of recovery is the difference between the value of the thing sold in its defective condition and its value as warranted (see Iberia Cypress Co. Ltd. v. Von Schoeler, 121 La. 72, 46 So. 105 and other cases) cannot be applied in cases of this sort inasmuch as the difference in value of real estate is not readily or easily ascertainable unless there has been an immediate resale of the property."
See also Bustamante v. Manale, 397 So.2d 842 (La.App. 4th Cir.1981).
In rejecting all demands for attorney's fees, the trial judge opined as follows:
"The remaining question is that of attorney's fees and damages. The seller who knows of the vice of the thing he sells and fails to declare it is responsible to the purchaser for reasonable attorney's fees and damages. La.C.C.P. [sic] Art. 2545. A builder is presumed to have knowledge of the vice or defects in the things he builds. [Cox v. Moore, supra]. Having failed to prove that a defect existed in the slab at the time of original construction by DeSoto, neither Truelove nor Easley can recover damages or attorney's fees from him.
Furthermore, Dunn, who reconstructed the house for Easley, is not a builder in the sense that he could be held to the knowledge of a manufacturer. He simply acted as a carpenter-supervisor in the reconstruction of the house. His role is analogous to the foreman in a manufacturing plant, who oversees the work for the owner. He may, in fact, have more knowledge on the quality and fitness of the product than the owner. Nevertheless, he is not responsible for the product as he is not the one who puts it into the market place for sale.
This leaves the question of whether Easley is a builder and therefore liable for attorneys' fees and damages. The Court concludes that he is not. Plaintiff points to the fact that the only reason Easley rebuilt the house was to sell it for a profit. He was already in the process of *1234 building a new house and never intended to live in the old house again. He purchased the house for $56,500.00; collected $58,649.00 in insurance proceeds for the house itself; and depending upon how much he may have put into the house after purchase, could have, at that point, walked away with a slight monetary gain plus a vacant lot. Instead, he chose to rebuild the house at a cost of $46,600.00, after which he sold it to plaintiff for $65,000.00. As his only motive in reconstructing the house was profit, plaintiff argues that he should stand in the shoes of a builder. However, an isolated instance of rebuilding a damaged house already owned by the seller, even for a profit, cannot make the seller a builder for the purpose of presumptive knoweldge [sic] of defects in the house. In the cases relied on by plaintiff, defendants were commercial ventures [sic] engaged in the business of building, fabrication or repairing the products complained of. The mere desire to make a profit on that which someone owns does not make the owner-seller a manufacturer. This is true even where the object of the sale has been remodeled, repaired or even altered by the owner unless it is done with some frequencyand thus becoming a business. To this effect a profit motive and a business motive are not synonymous. There is no evidence that Easley had actual knowledge of the defect, and accordingly, plaintiffs' sole remedy against Easley is for a reduction of the purchase price as prayed for."
We discern no clear error in the trial court's denial of the demands for attorney's fees against Dunn and the DeSotos. However, we conclude that, under the particular circumstances present, the trial court erred in rejecting plaintiffs' demand for attorney's fees against Easley. Following the fire, Easley substantially rebuilt the house at a cost of $46,000.00. Easley's obvious motive in rebuilding the house was to put it on the market for resale in the hopes of making a profit. Under such circumstances, he must be considered a vendor/builder of a residential structure, and thus, similar to a manufacturer who is presumed to know of the vices or defects in the thing he manufactures. Cox v. Moore, 367 So.2d 424 (La.App. 2d Cir.1979), writ denied, 369 So.2d 1364 (La.1979); Drewes v. Giangrosso, 429 So.2d 198 (La.App. 1st Cir. 1983); Chastant v. SBS-Harolyn Park Venture, 510 So.2d 1341 (La.App. 3rd Cir. 1987), writ denied. We consider an award in the amount of $2,500.00 to be reasonable.
For these reasons, the judgment is amended to award plaintiffs, Lynn and Terry Ann Truelove, judgment against defendant, Marvin H. Easley, for the additional sum of $2,500.00, as attorney's fees, with legal interest thereon from date of judicial demand until paid. In all other respects, the judgment is affirmed. Defendant, Marvin H. Easley, is cast will all cost of this appeal.
AFFIRMED AS AMENDED.