## MOREHOUSE ICE CO., Inc., v. TOOKE & REYNOLDS et al.*
### No. 4633.

Court of Appeal of Louisiana. Second Circuit.
May 4, 1934.

Goff & Goff, of Arcadia, and J. E. Reynolds, of Shreveport, for appellants.

Hudson, Potts & Bernstein, of Monroe, for appellee.

TALIAFERRO, Judge.

Defendant, Tooke & Reynolds, alleged to be a commercial copartnership, owned an ice manufacturing plant in Bastrop, La., operated under the trade name of "Home Ice Company." This company was a competitor of the Bastrop Ice & Storage Company, Incorporated, of the same town. On October 5, 1931, the partnership and its component members, C. A. Tooke and Judge J. E. Reynolds, sold the Home Ice Company, its good will, entire assets, consisting of plant with equipment and accessories, and lot of land whereon it is located, for $35,000 cash, and other good and valuable considerations, to Morehouse Ice Company, Incorporated, of the city of Monroe, La. The deed contained a general warranty covenant. Contemporaneously with the execution of said contract of sale, the parties thereto signed a separate instrument wherein it is declared that, as an inducement to the purchaser, Morehouse Ice Company, Incorporated, to buy said ice

*Rehearing denied June 4, 1934.

plant, etc., and pay the price above mentioned, the vendors made certain special covenants and stipulated special warranties unto said purchaser, its successors and assigns, among same being that:

"Said J. E. Reynolds and C. A. Tooke own in indivision the said real estate upon which said plant is located and said plant and its machinery, delivery equipment, etc., all of which will more fully appear in an itemized inventory which is attached hereto and made part hereof," etc.

It is additionally stipulated:

" * * * And said parties further warrant that said machinery and equipment described on the list attached hereto will be at the time said Morehouse Ice Company, Inc., takes possession of said property, and at the time of the signing of said deed, in good mechanical condition and in a reasonable state of repair."

As a concomitant of the sale, the vendors sold to the vendee two lawsuits in which they were plaintiffs, pending in the district court of Morehouse parish, against the Bastrop Ice & Storage Company, Incorporated, et al., and agreed, bound, and obligated themselves not to engage in the manufacture or sale of ice within definite territorial limits for five years.

The plant of Tooke & Reynolds was in operation the day of its sale. It was closed down as soon as the freezing of the ice therein could be completed, and thereafter was leased to the Bastrop Ice & Storage Company. It was not operated by that company regularly subsequent to its lease. The operations of both companies are conducted by the same management, but the stockholders and officers thereof, in whole or part, are different.

After closing the plant down, the purchaser had the engineer of the Bastrop Ice & Storage Company examine it to ascertain its physical condition and to determine the nature and extent of the repairs and replacements necessary to bring its condition up to the special warranty agreement of Tooke & Reynolds, quoted above. This examination took place on or before October 28th, twenty-three days after the purchase, because on that date counsel of plaintiff herein wrote Tooke & Reynolds, at Arcadia, La., a letter wherein it is said:

"Beg to advise that the Morehouse Ice Company, Inc., has reported to us that the following defects exist in the plant recently purchased from you in Bastrop, Louisiana."

This is followed by nine distinct items of vice or defectiveness, or possible defectiveness, in the plant, the knowledge of which was derived from the engineer's report. The letter closes by saying:

"We believe it will be well for you to have someone present so that the matter can be checked over and the exact condition of same determined. Any date that would be agreeable with you, we can arrange with our clients, the Morehouse Ice Company, to meet you in Bastrop and make this check."

This letter was received by Mr. Tooke, but no reply was made thereto other than by a telephone call by him of one of plaintiff's counsel in Monroe, wherein he promised to come over soon and see about the matter. He failed to do this, however. No other communications passed between the parties, and on or about November 15th plaintiff began overhauling and repairing the plant with the view and purpose of bringing its condition up to what it deemed to be defendants' obligations under the terms of the special warranty above referred to. This work was performed by the engineer and another employee of the Bastrop Ice & Storage Company, plus the services of an additional helper, and continued, intermittently, until March 18th, or over a period of practically four months. The total of the labor bill was $692.60, and for parts, accessories, freight thereon, etc., the bills amounted to $1,171.31, or an aggregate expense of $1,863.91, which is sued for herein, less, however, $219.10 due by plaintiff on insurance premium account.

On June 2d, after these repairs had been completed, plaintiff's counsel again wrote Tooke & Reynolds, at Arcadia, on the subject, and inclosed an itemized statement of the account herein sued on, payment of which was demanded. This letter was promptly answered by Mr. Tooke for the firm, in which he promised to come to Monroe soon to discuss the matter. He did not do so before June 25th, for on that date counsel again wrote him asking when a conference could be had between them. Some weeks after this, Mr. Tooke, accompanied by his own engineers, did come to Monroe, and went over to Bastrop and inspected the plant. On September 8th he wrote plaintiff's counsel that, after thoroughly and carefully checking the actual condition of the plant against the itemized account sent him, they could consistently allow $214.46 thereon, stating further that they did not believe a proper interpretation of their warranty would require that they even pay this much of the expense of the repairs

made. He suggested that this amount be deducted from the difference between them on account of insurance premiums. This suit was then filed.

Plaintiffs allege that, relying upon said special warranty covenant, it purchased defendants' plant and went into possession thereof; that immediately thereafter it had the plant examined and found it was not "in good, mechanical condition and (not) in a reasonable state of repair"; and that to bring said plant to a condition, such as was warranted, it was necessary to incur the amounts of expense sued for, after the defects in the plant had been reported to defendants with request that they, or some one for them, come to the plant to check the same over, which they failed and refused to do. It is expressly alleged that, on account of defendants' breach of warranty, to wit, their failure and refusal to comply with plaintiff's requests to come to said plant, or send some one there, so that the nature of defects therein could be checked over and extent of repairs determined, in order to meet the warranty agreement, it was forced to make said repairs and incur the expense shown on the account sued on.

In limine, defendants filed an exception of no cause and no right of action, wherein it is alleged:

"(b) That the plaintiff's petition contains no proper allegations of fact, which would authorize or justify any judgment or recovery against your defendants for the breach of a warranty in a contract of sale.

"(c) That the plaintiff's petition does not allege that it has performed the necessary acts and conditions precedent to the institution of a suit and the recovery of damages for the alleged breach of contract.

"(d) That, under the allegations of the petition, no sums or damages are due the plaintiff by your defendants, under the laws of this state."

This exception was overruled. It is vigorously urged and argued here.

While admitting execution of the various contracts hereinabove enumerated, defendants deny liability for any part of the account sued on, and pray for judgment for the $219.10 due them on amount of insurance premiums.

At the conclusion of trial of the case, defendants, reserving their rights under former pleas, objections to evidence, etc., filed a plea of estoppel, based upon these grounds:

"That the plaintiff having written the letter of October 28, 1932, specifying nine items of defective machinery, two of which have been abandoned by them as being without any merit, and thereby having led defendants to believe that these were the only claims or demands to be made, under their examination and inspection of the property, and having made no other demands, are now estopped from claiming for any other items, or cost of any other items, after causing defendants to believe and understand that these were the only defects that an examination of the condition of the plant disclosed.

"That defendants acted on the assumption that these were the only defects as stated in the letter, and the said plaintiff cannot now change its position, spend almost ten times the amount that was necessary to make the repairs set out in the letter, without notice, to the prejudice of these defendants."

The lower court sustained the plea of estoppel, and rendered judgment for plaintiff for $538.73, being amount of labor, parts, etc., to repair the defects in the plant enumerated in counsel's letter of date October 28, 1931, less the admitted credit of $219.10. Both sides appealed.

### Exception of No Right and No Cause of Action.

Defendants' position on the exception is that, in case of latent vices and defects in the thing sold, the purchaser has three remedies to redress his wrongs, dependent upon the facts of his case: (1) Redhibition (article 2520, Civil Code); (2) quanti minoris (article 2541, Civil Code); and (3) an action for damages besides restitution of the price and repayment of expenses, if the seller knows the vice of the thing he has sold and omits to declare it (Civil Code, art. 2545). They argue that the present suit does not fall within either of the three cases named. It is certain it does not fall within the purview of No. 1 or 3. There is no suggestion of bad faith in the case. We think it clearly falls under article 2541, which reads: "Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."

The very foundation of a redhibitory action, or one for the reduction or diminution of the price, commonly called the action "quanti minoris," is the warranty, express or implied, of the seller that the thing sold is

sound, free from any of those vices that give rise to either action. If the vices of the thing are so radical as to render it absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the purchaser would not knowingly have bought it, then the sale may be annulled, if by doing so the status quo ante be restored. If the vices are of such character as only to diminish its value, the buyer may limit his demand to the reduction of the price. If the price has not all been paid, he may oppose the action to compel him to pay it by invoking the relief article 2541 of the Civil Code grants to him. If he has paid all the price, then he is relegated to a suit on the warranty the sale superinduced, if none be expressed orally or in writing. If the vices of the thing have not been repaired by the vendee and he chooses to retain it, he may recover of his vendor the difference between the price and the actual value of the thing sold at the time and place of sale. In other words, the difference between a sound and unsound article. Iberia Cypress Co. v. Von Schoeler, 121 La. 72, 46 So. 105; Peterkin v. Martin, 30 La. Ann. 894; Foster v. Baer, 7 La. Ann. 713.

██ If the defects have been repaired, the purchaser cannot recover the expense thereof and also secure a reduction in the price. Iberia Cypress Co. v. Schoeler, supra. In such case, should he choose to preserve the integrity of the sale to him, he may only sue for reduction of the price. Whether the purchaser sues for a reduction of the price eo nomine, the measure of which is the difference in value of a sound and unsound article, or whether he sues for the amount necessarily expended by him to convert the unsound article into one of soundness, is a distinction without a difference.

█ The petition in this case, in effect, says that the plant was warranted specially to be in a certain condition when sold and delivered to plaintiff. It is asserted that it was not in that condition, and that defendants breached their warranty by not taking action to cure the defects, the existence of which they warranted against, and that, too, after being notified that such defects had been discovered after examination of the plant. Plaintiff sues to recover the amount it claims to have necessarily expended to convert the plant from a condition of defectiveness or unsoundness to a condition of soundness. Should it succeed, in effect it has secured a reduction in the price of the plant by recovering the amount expended by it to put it in the condition it was warranted to be in.

The exception is not well founded, and was properly overruled.

### Plea of Estoppel.

█ We think the ruling of the lower court on this plea also correct, in so far as plaintiff's right of recovery was limited to the amount expended for material and parts and labor to remedy the first seven of the defects or vices enumerated in its counsel's letter to defendant of October 28, 1931. It was found and admitted that the possible impairments mentioned in Nos. 8 and 9 of the list did not, in reality, exist. However, we do not think defendants should be charged with the price of the new magneto purchased by plaintiff at a cost of $90.25. No magneto is listed in the inventory attached to the special warranty agreement sued on. The engine for which it was purchased could be, and had been, run by energy supplied by an electric battery. The lower court also allowed $194.74 for labor of the extra workman hired by plaintiff. A check of the account sued on discloses that this amount was paid him for services rendered while all the repairs were being made, over the entire period of four months. We have no way of arriving at the amount paid him for services rendered in doing the repair work covered by plaintiff's letter of October 28th. The lower court also rejected, in their entirety, the amounts paid the two regular employees of the Bastrop Ice & Storage Company who rendered service in repairing the plant. We think this erroneous. The labor of these two men is on a parity with that of the one specially employed. However, as in his case, we cannot determine the amount paid them for labor they performed to remedy the vices named in the letter of October 28, 1931.

Under the special warranty agreement sued on, it was defendant's legal duty to deliver the plant in the condition guaranteed thereby. Whether it was in such condition is a question of fact about which no wonder should be shown at disagreements. Plaintiff, while in possession of the plant for three weeks, had it examined and inspected by an experienced engineer of its own selection, for whose competency it vouches, and he reported to it the various vices and defects of which defendants were promptly advised. Mr. Tooke testified that he checked over this list with his own engineer, and they reached the conclusion that it would not cost more to do this than plaintiff was due defendants

on insurance premium account, and virtually dismissed the matter from further consideration. It goes without saying that, had he been advised that a repair bill of nearly $2,-000 was going to be incurred, he would have pursued a contrary course. He was certainly lulled into the belief, by counsel's letter, based upon plaintiff's engineer's examination of the plant, that that letter covered all the defects to be repaired, and based his passive attitude thereon. Defendants had the right, under the law, to repair the plant at their own expense, to discharge their warranty obligations. They were entitled to notice from plaintiff of the extent and nature of the vices plaintiff thought should be repaired to meet the warranty covenant. Plaintiff originally conceded defendants' right in this regard; hence the letter of October 28th.

Mr. Tooke has had considerable experience in buying, building, and operating ice plants. When this controversy arose, he and Judge Reynolds were the owners of some. They had in their employ engineers of experience to whom they could have intrusted the repair work on the Bastrop plant. Can it be said, in reason, that they have not suffered loss or that their rights have not been prejudiced because of plaintiff's course in this matter? Are defendants without relief against the effort of plaintiff to compel them to pay a very large account the accumulation of which they were ignorant of until too late to have a voice in its creation? The contract conferred no such extraordinary rights upon plaintiff. The plant was making ice when purchased, and had been making it steadily through the summer months preceding. In view of this, is it not but natural that defendants assumed, and had the right to assume, that plaintiff's original estimate of the extent of the repairs necessary to put the plant in "good, mechanical condition and in a reasonable state of repair," was within reason, and were they not completely lulled, by these representations, into a sense of security in this respect? It seems to us so. They contend, and reasonably so, that, because of these representations, they were induced to take a position and pursue a course of action which they would not have taken or pursued had they been fully advised of plaintiff's purpose to do the extensive and expensive repairing to the plant they are now being sued for.

In Wilkinson v. Macheca, 158 La. 183, 103 So. 733, 734, it was held: "Plea of estoppel held not available, where party pleading it was not induced by plaintiff to change his position or to act differently from the way he would have acted otherwise."

And in Bradford-Kennedy Company v. Brown, 152 La. 29, 92 So. 723, 726, the court said: "It is well settled that, when a person has done or said something with intent to influence the dealings of another, and the other has acted upon the faith of it, the former ought not to be permitted to change it to the injury of the latter."

The facts of these two cases are dissimilar to those of the case at bar, but the principle therein emphasized and recognized finds equal force and application in this case.

There is conflict in the testimony introduced to prove the proper cost of the material and parts necessary to do the repairing, for which plaintiff is entitled to recover. In view of this situation, we will accept the findings of the lower court thereon. After eliminating the cost of the magneto and labor bill, the balance due plaintiff, as found by the trial judge, is $253.74.

For the reasons herein assigned, the judgment appealed from is amended by reducing the amount thereof in plaintiff's favor to $253.74, and by nonsuiting plaintiff's demand for the amount of the labor bills incurred in making repairs to the plant specified in letter to defendants of October 28, 1931; in all other respects, the judgment appealed from is affirmed; costs of appeal to be paid equally by the parties.