69 So.2d 924 (1954)
MATTES et al.
v.
HEINTZ et al.
No. 20109.
Court of Appeal of Louisiana, Orleans.
January 18, 1954.
Rehearing Denied February 15, 1954.
Writ of Certiorari Denied March 22, 1954.
*925 Lewis R. Graham and William M. Campbell, Jr., New Orleans, for Harry R. Cabral, defendant-appellant.
Leopold Stahl, New Orleans, for plaintiffs-appellees.
McBRIDE, Judge.
This case resolves itself to this: Plaintiffs seek to recover from Harry R. Cabral, whom we shall call "defendant," the sum of $808.15, the cost of remedying a defect in the premises 6531 Canal Boulevard, which was purchased by Mrs. Mattes with full warranty from Cabral, on July 16, 1952. From a judgment in favor of plaintiffs for $400, Cabral has appealed. Plaintiffs, in an answer to the appeal, pray that the judgment be increased to the sum claimed in their petition.
Plaintiffs allege that the defect, a leaking underground hot water pipe line, was latent and nonapparent; that they had the condition corrected at a cost of $808.15; that the break in the water line was such that if not remedied in time, it would have caused considerable damage to the property; that the said vice existed prior to the sale and was well known to defendant.
The agreement of sale between Mr. Cabral and Mrs. Mattes was signed on May 28, 1952. A few days thereafter Cabral delivered the keys to Mr. Mattes with permission to enter the premises and make such inspections and repairs as he desired. Mattes first went upon the premises about June 2, and between that date and the day on which the formal act of sale was passed, July 16, 1952, was on the premises "plenty of times," as he stated it. On August 29, 1952, up to which time Mr. and Mrs. Mattes had not moved into the property, they discovered the broken pipe on attempting to dig a trench alongside a chain wall of the house for the planting of some shrubs. That there was a broken pipe became manifest when the trench immediately became filled with water. An employee of the Sewerage & Water Board was summoned to the scene and ascertained that eleven gallons of water per minute were flowing through the break. Mattes testified that "there was a veritable river coming from underneath the house," and he engaged Robert Duvio, an experienced licensed master plumber, to make the necessary repairs.
*926 The house in question was about two years old and had never been occupied before the Mattes family moved into it. The building was erected over a "floating concrete slab," as Duvio explained, which means, as we understand it, that the slab was not anchored or tied to the chain wall foundations, which rest on piles. In other words, the slab could move with the shifting or sinking of the soil. The water system was described thus: The inlet pipe from the street water main entered the premises under the concrete slab, and then one line of copper pipe went up through a wall to the hot water heater in the attic, and then from the heater the pipe ran down the wall and under the concrete slab and thence up to the faucets supplying hot water to the various fixtures. The concrete for the slab had been poured after the pipes above alluded to had been placed below the level of the soil. Mattes testified that the flow of water which led to the discovery of the break was not in evidence prior to the date of the sale, and only became apparent when the trench was dug.
Exactly what caused the leak has not been shown. The condition could not have resulted from subsidence, as the vendor himself testified that the building was supported by piling and was not subject to settlement. The evidence satisfies us that none of the activities or acts of the plaintiffs could have contributed to the rupture in the pipe, inasmuch as the water lines were entirely covered by the floating concrete slab. The only construction work done by Mattes was the completion of the kitchen wall and the installation of new kitchen units. Plaintiffs' plumber advanced a theory as to what might have caused the defect in the pipe when the house was erected, but his testimony on that detail need not be discussed. Suffice it to say, our opinion is that the pipe was broken before the sale, and such condition was latent and could not have been readily discovered upon inspection. However, we believe, as did the trial judge, that Mr. Cabral had no knowledge thereof.
Defendant attempted to show that the hot water system was in operation from January 1952 until August 29, 1952, except perhaps for a few days while the utilities were being changed from the name of Cabral to Mattes. Cabral stated that he did not know of the leak until September 3, when he received notice of it from Mattes, at which time Mattes had already effected the repairs. Cabral exhibited the property to numerous prospects and stated that from time to time the water heater was turned on, and no leak beneath the house was evident. In support of his testimony defendant introduced in evidence several bills from utility companies showing the use of gas and water in the premises prior to the sale; however, these bills reflect that little or no gas or water was used in the premises before Mrs. Mattes' acquisition of title. The fact that when Mattes attempted to light the heater, the burner was so rusted that it was necessary to call in a plumber to take the burner off and clean it, indicates to our minds that the heater had not been used for some time.
The warranty respecting the seller has two objects: the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing or its redhibitory vices. LSA-C.C. art. 2476. Redhibition, as defined by LSA-C.C. art. 2520, is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it had he known of the vice.
Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price. LSA-C.C. art. 2541.
Under Art. 2521 apparent defects, that is, those such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.
The buyer who institutes the redhibitory action must prove that the vice existed before *927 the sale, unless the vice has made its appearance within three days immediately following the sale, in which event it is presumed to have existed before the sale. LSA-C.C. art. 2530.
Plaintiffs have successfully carried the burden imposed upon them by law, as the evidence clearly shows that the vice must have existed prior to the passage of the formal act of sale, and that the buyer could not have had notice or knowledge thereof, for the reason that an inspection of the premises would not have brought home to her that there was such a vice or defect as is complained of. The language of LSA-C.C. art. 2530 does not mean that the buyer must prove by eyewitnesses the existence of the vice before the sale, or that such a vice was known to exist. The court may take into consideration such surrounding circumstances as may appear and deduce therefrom the fact of the existence of the vice prior to the sale.
In Wilfamco, Inc., v. Interstate Electric Co., 221 La. 142, 58 So.2d 833, 834, the Supreme Court said:
"The action quanti minoris or for reduction in the price is proper when the thing sold is so defective that it is useless and altogether unsuitable for its purpose or when the defect is such as to diminish its value. Articles 2520 and 2541, Civil Code. Under the jurisprudence of this state, the cost of repairs necessary to make the thing whole is the proper measure for reducing the price. De Armas v. Gray, 10 La 575; Tuminello v. Mawby [220 La. 733], 57 So.2d 666; Morehouse Ice Co., Inc., v. Tooke & Reynolds, La. App., 154 So. 402."
See also McEachern v. Plauche Lumber & Construction Co., 220 La. 696, 57 So.2d 405.
Davio, plaintiffs' plumber, testified that due to its position under the concrete slab, the pipe could not be repaired except at a large expense, because the undertaking would entail tearing up the flooring in the house and breaking the concrete slab in order to reach the defective pipe, and he estimated the cost of such procedure at between $4,000 and $6,000. Duvio solved the problem confronting him by running the pipes direct from the water heater to the various fixtures, thus cutting off entirely the pipes under the house, and his testimony is that this was the most practical and economical method of taking care of the situation. This necessitated certain plastering, replacement of tile, and painting in the premises, which plaintiffs have proven aggregated $808.15, the amount which they claim, and the testimony of the persons who performed the work is that their several charges were entirely just and reasonable. The trial judge reduced the amount claimed to $400, but we find no basis upon which such a reduction in the amount can rest. Plaintiffs are entitled to reimbursement of the total amount expended in placing their home in sound condition.
In the court below defendant filed the exception of no cause of action, which was referred to the merits of the case by the trial judge. Defendant, besides reurging the exception, has also filed an identical exception here. The exception is based on certain allegations of the petition going to the effect that on and after the sale, and a short time after plaintiffs took possession, they discovered that the ground beneath the house was completely flooded with water. Counsel for exceptor argue that, taking the allegation as true, plaintiffs knew of the defect at the moment of the sale. We see no merit in the exception, as the import of the allegation seems to be that plaintiffs did not learn of the defect until a short time after Mrs. Mattes obtained title to the building. The evidence taken on the trial abundantly shows that to be the case. Plaintiffs had no notice or knowledge of the defect until August 29, 1952, when water was observed to be pouring out from under the house.
While the defendant has filed no special plea to that effect, he argues that plaintiffs are estopped from claiming the *928 amount expended for the repairs, for the reason that they did not obtain bids for the performance of the work, and failed to give notice to defendant until after the repairs had been made. In support of the plea we are cited to Morehouse Ice Co., Inc., v. Tooke & Reynolds, La.App., 154 So. 402, which is authority merely for the proposition that where a seller warrants property to be in a reasonable state of repairs, and the buyer after an inspection notified the seller of certain vices and defects covered by a special warranty, that the buyer is estopped from subsequently asserting other material vices as being covered by the warranty, in view of the seller's reliance on the original notice with prejudice to himself.
An entirely different situation exists in the case now under consideration. Plaintiffs, upon discovering the gushing of the water from the break, had the plumbing repaired immediately, which was the reasonable thing to do under the circumstances. There is no question that an emergency existed, and they believed that their home would be liable to substantial damage unless the broken water line was corrected at once.
For the reasons assigned, the judgment appealed from is amended so as to increase the amount of the judgment to $808.15, and as thus amended, and in all other respects it is affirmed.
Amended and affirmed.