139 So.2d 12 (1962)
Clair C. FITZMORRIS, Wife of Curtis J. PURSELL, and Curtis J. Pursell
v.
John J. KELLY.
No. 338.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1962.
Rehearing Denied April 2, 1962.
Certiorari Granted May 18, 1962.
Cronvich & Ciaccio, Alwynn J. Cronvich and A. W. Wambsgans, New Orleans, for plaintiffs and appellants.
Frank C. Moran, Jr., New Orleans, for defendant and appellee.
Before McBRIDE, YARRUT and HALL, JJ.
McBRIDE, Judge.
This is a redhibitory action. Plaintiffs-purchasers, by original and supplemental petitions, are seeking the rescission of the sale to them on March 4, 1958, by defendant of Lot 13-A, Square 633, First District of New Orleans, the improvements whereon consist of a wooden two-story frame combination grocery store and residence bearing the Municipal No. 238 So. Salcedo Street. The building was more than forty, and probably as much as fifty, years old at the time the sale took place. Plaintiffs pray for the return of their $15,000, the purchase price, together with certain expenses for the preservation of the property occasioned by the sale, plus damages. It is alleged that the building has been and is being infected and extensively damaged by termites and is unsafe for occupancy, of which condition plaintiffs were ignorant and which condition could not have been discovered by simple inspection or examination, and that they would not have purchased the property if they had known of the vices and defects therein. One of the defenses urged is that the plaintiffs could have discovered any vices or defects in the premises by simple inspection, and, therefore, *13 such vices and defects do not warrant the redhibitory action.
After a trial, the judge below was of the opinion that the defects in the property were discoverable by simple inspection, and he rendered judgment in favor of defendant dismissing the suit, from which judgment the plaintiffs appealed.
The wall on the Canal Street side is bowed and leans, and the walls on the Salcedo and Palmyra Street sides are leaning; the upstairs front room slopes and appears "shaky"; the foundations have sunk, and the sidewalks are below grade from soil subsidence. Mouledous, architect, plaintiffs' chief witness, makes it very plain that such defects were visible and discoverable by the use of the naked eye. He stated he noted the above defects the first time he drove up to the property in his automobile. The plaintiffs visited the premises before agreeing to buy, and they saw, or should have seen, said conditions. Mouledous further stated that all the buildings in the neighborhood are leaning, which we deem a good indication that the whole neighborhood is deteriorating.
However, there were some conditions which were not readily apparent and were unknown to the plaintiffs. At the time plaintiffs made their pre-purchase and cursory inspection, the property was occupied by defendant (who remained in the premises for two days after the sale), furniture was in place, the walls were papered, and any dry rot and termite damage could not have been ascertained or discovered by simple inspection. When defendant vacated the building, plaintiffs leased it to one Dukes, who, when cleaning the store quarters, removed a large piece of furniture from against a wall and then discovered some defects in the studs. This precipitated further examinations, and the generally bad condition of the place became known.
Mouledous made several examinations. He probed the flooring and walls and removed weatherboards. Besides pointing out the above-mentioned condition of the walls and the sloping upper front room, Mouledous stated that almost throughout the building there was dry rot and termite damage; a majority of the studs were in bad condition; the kitchen floor had dropped two or three inches (this occurred after the sale); the flooring on the upper end of the inside stairway had been damaged; damage existed around the chimney on the first floor; there were termites in the attic but no "bad" damage; the support to the stairs was damaged; the roof leaks in the rear; all damage appears to be "old." Mouledous attributed 50 percent of the defects to the ravages of termites and 50 percent to dry rot. This later condition results from excessive dampness in lumber and the passage of time. His opinion was that the building had sustained more than the usual wear and tear. He also pointed out a structural defect. Many years ago concrete mixed with cinders had been poured through the flooring, and the hardened concrete reached from the ground up to the floor boards acting as a sort of prop for the floor. According to Mouledous this is not a present-day procedure and he disapproves of it, but he could not say that it was not accepted as standard engineering at the time the work was done.
Mouledous recommended that the rear of the first floor from the dividing partition between the store quarters and the living quarters in the rear be completely ripped out; that the concrete beneath the floor be removed and replaced with a new slab; he would shore up the second floor, then, after "gutting out" the lower floor, he would reset the second floor down on the newly-built first floor. He would install a new stairway, replace plastering, reset millwork, straighten the walls, etc., etc.
Mouledous compiled a long list of what he deemed necessary repairs and corrections and furnished the same to Schaff, a contractor, for price estimation. Schaff submitted a detailed "preliminary cost estimate for the rehabilitation of 238 So. Salcedo Street" which, inclusive of the architect's *14 fee, aggregates $9,871.15. The amount of the estimate would equal about 5/6ths of the cost of the purchase price of the building. The sale was for $15,000. The evidence shows the value of the ground to have been $3,000, thus leaving the cost of the building $12,000. Mouledous stated that if the work he recommends is done, the building would be as good, if not better, than the day it was built.
The law of this state places on the vendor the obligation of warranting the thing against hidden defects or its redhibitory vices. LSA-C.C. arts. 2475, 2476. Hidden defects are those which could not be discovered by simple inspection. LSA-C.C. art. 2521. Under LSA-C.C. art 2520 redhibition is defined to be the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice. An action for reduction of the price is included in the redhibitory action and the buyer may limit his demand to a reduction, or the judge may decree merely a reduction of the price. LSA-C.C. arts. 2541, 2542, 2543.
The redhibitory action and the action quanti minoris are applicable as well to sales of real property as to sales of movables. Under our jurisprudence the costs of repairs necessary to restore the property to the condition it should have been in is the proper measure for determining a reduction of the purchase price of real property. Latent termite damage has been held to be a redhibitory vice. Bayou Rapides Lumber Co. v. Davies, 221 La. 1099, 61 So.2d 885; Wilfamco, Inc. v. Interstate Electric Co., 221 La. 142, 58 So.2d 833; Tuminello v. Mawby, 220 La. 733, 57 So.2d 666; McEachern v. Plauche Lumber & Construction Co., Inc., 220 La. 696, 57 So.2d 405; DeArmas v. Gray, 10 La. 575; Foreman v. Jordan, La.App., 131 So.2d 796; Ruehmkorf v. McCartney, La.App., 121 So.2d 757; Johnson v. Hunter, La.App., 88 So.2d 467; Mattes v. Heintz, La.App., 69 So.2d 924; DiPietro v. LeBlanc, La.App., 68 So.2d 156; Bozemar v. McDonald, La.App., 40 So.2d 517; Morehouse Ice Co., Inc. v. Tooke & Reynolds, La.App., 154 So. 402; Matthews v. Rudy, 4 La.App. 226.
In none of the above cited cases was the court dealing with a fifty-year-old building which showed visible signs of being decrepit, and in that respect the instant case may be differentiated from each of said cases. The bowed and leaning walls, the slanting and "shaky" upstairs room, and the leak in the roof all were defects which could and should have been discovered by simple occular inspection. Mouledous noted the condition of the walls as he drove up to the premises in his automobile, and we know of no reason why the plaintiffs should not have observed these defects. We agree that the damage caused by dry rot and termites was not apparent and was not discoverable by simple inspection as it was hidden behind the plaster and weatherboards and in and beneath the flooring. The damaged floor was obscured by defendant's furniture and carpeting.
The outward appearance of the building, insofar as the paint is concerned, is fair, but, be that as it may, plaintiffs knew they were buying an ancient building with walls entirely out of plumb and an upper room that was slanting and "shaky." They knew there had been some sinking of the foundations. They should have known as reasonable persons that there was something defective about the premises, otherwise the walls would not be bowed and leaning, nor would the upper room be in the condition it was. The visible defects should have been sufficient to have placed them on inquiry, and they should have had a more comprehensive inspection made of the building to determine its true condition. They seemed satisfied with the premises although it had every appearance of unsoundness. We do not think they can now demand a rescission of the sale or a reduction in price in any amount.
*15 LSA-C.C. art. 2521 reads as follows:
"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
The judgment appealed from is affirmed.
Affirmed.