FORET, Judge.
The plaintiff, Jesse Moses, filed this red-hibition suit against Ed’s Manufactured Housing, Inc. (Ed’s), and Eagle Housing, Inc. for the return of the price that he paid for a mobile home purchased from Ed’s and manufactured by Eagle. The trial court awarded judgment in favor of the plaintiff and against the defendants, ordering the return of his purchase price of $23,649.00, together with $1,500.00 in attorney’s fees, and gave judgment for Ed’s on its third party demand against Eagle for indemnification for all sums for which it was legally liable and, additionally, awarded Ed’s $1,500.00 in attorney's fees against Eagle. Eagle has perfected this appeal, and the plaintiff has answered the appeal seeking an increase in the attorney’s fees awarded. We affirm the judgment of the trial court and award the plaintiff an additional $750.00 in attorney’s fees for this appeal.
Plaintiff purchased the- mobile home in question from Ed’s on November 10, 1981, for $23,649.00, which he paid in cash. The home had been delivered to Ed’s by Eagle on or about the 1st of November. When Ed’s performed a pre-service inspection pri- or to delivering the home to plaintiff, it discovered numerous leaks in the kitchen, baths, and under the home. Ed’s comment on its service report was, “Hell it leak [sic] all over.” Ed’s performed repairs to those leaks which it discovered and delivered the home to plaintiff. The plaintiff began having problems with the home immediately after delivery as evidenced by service work orders submitted by Ed’s. The plaintiff reported that the electric furnace didn’t work, windows didn’t work properly, items were broken or torn, the carpet began un-ravelling, a shower head was broken, and mirrors were cracked. Some of these things were repaired and others were not.
By the first part of February, the plaintiff had many more problems to report to Ed’s. He complained of water leaks in one of the bathrooms, cold air coming in through the wall receptacles, door facings, windows, and stereo mounting in the wall, wind coming in between the ducts and floor vents which were cut too large, problems with the roof, dishwasher, roof leaks, the vinyl floor in the kitchen had metal shavings coming through it and rumbling of the roof. Again Ed’s repaired what it could and notified Eagle that repairs were needed. On March 27, 1982, Ed’s sent a letter to Eagle listing the many problems and noting Eagle’s unsuccessful attempts to remedy the problems.
In May, Ed’s, with Eagle’s knowledge, requested that the State Fire Marshal perform an inspection of plaintiff’s home in order that there be an unbiased third par *937 ty’s opinion and assessment of plaintiffs problems and complaints. The Fire Marshal did inspect the home and made a detailed list of the problems and plaintiffs complaints. The lists of problems noted by plaintiff, Ed’s, and the Fire Marshal have been lengthy and none of them remedied by Eagle to the plaintiff’s and Ed’s satisfaction. The Fire Marshal, in a January, 1983 report, noticed the extensive leaking in the roof which had caused unsightly stains on the ceiling tiles and had caused the area carpets, as well as the particle board underneath, to become wet.
In September of 1982, the plaintiff, himself, wrote to Eagle requesting that they take care of the repairs that they were supposed to have made but still had not. The plaintiff at that point was very discouraged about the problems that he was having and suggested that if the problems could not be corrected and the home be made as it was intended, then he would have to ask for his money back. Plaintiff contacted an attorney in or around January, when Eagle failed to rectify the situation, and this suit was filed. Prior to the trial on the merits, plaintiff experienced a severe plumbing leak in the kitchen which caused extensive damage to the kitchen cabinets and floors, though the full extent of the damage could not be ascertained without removal of the kitchen fixtures.
The defendant-appellant, Eagle, has assigned seventeen errors to the judgment of the trial court finding the defects complained of to be redhibitory. We do not think that the trial court was clearly wrong in its factual findings regarding the nature and severity of the roof and plumbing leaks and their redhibitory nature. The trial court found that the defects existed at the time of the sale, and that they were not readily apparent:
“The principles of law applicable to redhibitory actions generally and applicable to the case before us specifically were summarized in Rey v. Cuccia, 298 So.2d 840 (La.1974):
“In Louisiana sales, the seller is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the product’s intended use. Civil Code Articles 2475, 2476, 2520; Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972). The seller, of course, can limit this warranty by declaring to the buyer the hidden defects at the time of the sale, Article 2522, or can otherwise limit his obligations as seller, providing he do so clearly and unambiguously, Article 2474.
“A redhibitory defect entitling the buyer to annul the sale is some defect in the manufacture or design of a thing sold ‘which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.’ Article 2520. Upon proof of such a defect, the buyer is entitled to annul the sale and recover the purchase price, rather than being limited to recovering the cost of curing any such substantial defects. Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973).
“The buyer must prove that the defect existed before the sale was made to him. Article 2530. However, if he proves that the product produced is not reasonably fit for its intended use, it is sufficient that he prove that the object is thus defective, without his being required to prove the exact or underlying cause for its malfunction. J.B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693 (1949); Crawford v. Abbott Automobile Co., Ltd., 157 La. 59, 101 So. 871 (1924); Stumpf v. Metairie Motor Sales, Inc., 212 So.2d 705 (La.App. 4th Cir.1968); Fisher v. City Sales and Service, 128 So.2d 790 (La.App. 3d Cir.1961).
“The buyer may prove the existence of redhibitory defects at the time of the sale not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of the sale. Fisher v. City Sales and Service, 128 So.2d 790 (La.App. 3d Cir.1961); Mattes v. Heintz, 69 So.2d 924 *938 (La.App.Orl.1954); Standard Motor Car Co. v. St. Amant, 18 La.App. 298, 134 So. 279 (La.App. 1st Cir.1931). As stated in Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151, 155; ‘ * * * proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows the fact or causation sought to be proved is more probable than not.’
“If the defect appears within three days following the sale, it is presumed to have existed before the sale. Article 2537. However, even where the defect appears more than three days after the sale (as here, when it appeared on the second day of use, but ten days after the sale), if it appears soon after the thing is put into use, a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale. Andries v. Nelson, 46 So.2d 333 (La.App. 1st Cir.1950); Standard Motor Car Co. v. St. Amant, 18 La.App. 298, 134 So. 279 (La.App. 1st Cir.1931). See, for similar principle, when a constructed thing fails shortly after being put into use. Joyner v. Aetna Casualty & Surety Co., 259 La. 660, 251 So.2d 166 (1971).”
Ticheli v. Silmon, 304 So.2d 792 (La.App. 2 Cir.1974).
The defendant’s witnesses testified that the roof leaked because of faulty installation process used by Eagle at the time the home was manufactured, so clearly that defect existed prior to the sale. Defendant contends that this defect is easily cured and, therefore, not redhibitory. Unfortunately, the defect and the means to repair it were not discovered until substantial damage and inconvenience had been caused to the plaintiff. We do not feel that the curability of the defect at such a late date renders the plaintiff’s action null. The trial court also found that the evidence supported the reasonable conclusion that the plumbing leak existed prior to the sale and was redhibitory. The evidence is overwhelming that this home was plagued by leaks prior to its purchase by plaintiff and subsequent to its purchase and habitation by plaintiff. We agree with the trial court that these defects, and-in addition, the existence of multiple other problems, were of such a nature and so severe that it was rendered so inconvenient and imperfect that the plaintiff would not have purchased the home had he known of them. We therefore agree that plaintiff was entitled to return of the purchase price, plus attorney’s fees.
“The manufacturer is presumed to know of the defect in the thing made by him and, therefore, is deemed to be in bad faith in selling a defective product. A manufacturer is liable to a buyer for damages and attorney’s fees in addition to the purchase price and expenses occasioned by the sale and those incurred for the preservation of the thing sold. LSA-C.C. art. 2545; Rey v. Cuccia, supra.”
Cox v. Lanier Business Products, Inc., 423 So.2d 690 (La.App. 1 Cir.1982), writ denied, 429 So.2d 129 (La.1983).
“It is settled that a dealer-seller may have judgment over against the manufacturer of an item which the dealer sells when the sale is rescinded for redhibition. The right was specifically confirmed by the addition of the second paragraph of LSA-C.C. art. 2531 in 1974. As amended this article reads:
“The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right *939 of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect.”
Musemeche v. G & J Mobile Home Ser. & Supplies, 425 So.2d 791 (La.App. 3 Cir.1982).
“A manufacturer is presumed to know the defects of the thing he manufactures and is, therefore, in bad faith and liable for attorney’s fees under art. 2545. LSA-C.C. art. 2545. This includes an award of reasonable attorney’s fees to an intermediate seller on a third party demand against a manufacturer. Millin v. Dawson, 387 So.2d 1213 (La.App. 1st Cir.1980); Porche v. Robinson Brothers, Inc., supra; Gonzales v. Southwest Mobile Homes, Inc., 309 So.2d 780 (La.App. 3d Cir.1975), writ refused 313 So.2d 239 (La.1975).”
Cox, at p. 693.
The trial court found Ed’s to be a good faith seller and, accordingly, granted indemnification to it on its third party demand against Eagle and awarded Ed’s attorney’s fees. We find no error in this judgment of the trial court.
Accordingly, the judgment of the trial court in favor of plaintiff and against Eagle and Ed’s for the sum of $23,649.00, plus interest from date of judicial demand, plus $1,500.00 in attorney’s fees against Eagle with interest thereon; and the judgment in favor of Ed’s against Eagle for full indemnification for any amounts to be paid by Ed’s to plaintiff, plus attorney’s fees in the amount of $1,500.00, plus interest thereon, is hereby affirmed, and the plaintiff is awarded an additional $750.00 in attorney’s fees.
All costs are to be borne by Eagle Housing, Inc.
AFFIRMED.